## McDONNELL v. CENTRAL DRUG CO.

1. Master and Servant — Duty to Provide Safe Tools — Explosion.

In an action for the death of plaintiff's intestate because of an explosion of a gas tank which he was shaking and filling, while another servant, sent by a representative of the master to instruct the deceased in the method of doing the work, was turning on more pressure, evidence that the tank had been used for a long time and had been allowed to become rusty furnishes evidence from which the jury might find that the explosion was due to the master's neglect.

2. Same—Fellow-Servant—Proximate Cause.

Since the evidence does not conclusively show that the fellow-servant was guilty of negligence, or that his negligence alone caused the explosion, it was error to direct a verdict for the defendant.

3. Same — Fellow-Servant — Negligence in Instructing Employé.

An explosion resulting from the negligence of a co-employé with the deceased in turning on an excessive pressure of gas into a tank which he was instructing deceased to operate, is neglect in the performance of one of the master's nondelegable duties.

Error to Wayne; Murfin, J. Submitted February 15, 1910. ( Docket No. 151.) Decided March 19, 1910.

Case by Ella McDonnell, administratrix of the estate of Michael McDonnell, deceased, against the Central Drug Company for the negligent killing of plaintiff's intestate. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Sloman & Sloman* (*William S. Sayres, Jr.*, of counsel), for appellant.

*O. E. Butterfield*, for appellee.

HOOKER, J. The plaintiff's intestate and husband was killed by the explosion of a soda fountain tank while he was engaged in charging it. In an action brought to recover damages for his death, a verdict was rendered in defendant's favor by direction of the trial judge upon the ground that negligence of the defendant was not proven, or, to be more specific, we understand that the learned circuit judge was of the opinion that the testimony in the case left the cause of the accident a matter of conjecture merely, and that it was quite as consistent from the testimony to conclude that it was caused by a fellow-servant in admitting too much gas, and consequently subjecting the tank to too high a pressure, as that it was due to the rusting and weakness of the tank, a condition of the tank which was fairly deducible from the testimony. The plaintiff has appealed.

We append a diagram of the apparatus used on the occasion of the accident. The theory upon which it is said to operate is that the cylinder marked "drum" is filled with carbonic acid in a liquid form, which this gas is said to assume under a sufficient pressure. The operation of the cylinder marked "tank" is, first, to put in 10 or 11 gallons of water, which is expected to absorb carbonic acid when introduced in gaseous form. This gas is then introduced through the copper pipe and rubber tube on opening a valve on top of the drum marked "key" and the valve marked "valve" at the upper end of the rubber tube. We do not find any testimony tending to show the amount of pressure that the tube or pipe will withstand. The gas passes through the gauge shown between the pipe and tube, and it is said that the regulator, if properly set, will shut off further pressure from the drum, when it reaches the desired pressure in the tank. This regulator was not used on this occasion; it being the common practice to control the admission of gas with the key. It was proved that the regulator is not provided for some such apparatus. The plaintiff claimed, and proved, that her husband was a porter in defendant's drug store, and was

sent with an experienced man to charge the tank, who was to show him how to perform that work.   We cannot find evidence tending to show that the accident was due to lack of instruction, for the deceased did nothing leading to or causing the accident which apparently was due to one of two things:   (1) The defective condition of the

tank.   (2) The overcharging of the tank by his companion.

**Condition of Tank.**   This tank sat upon the floor in a cellar, which was damp, and in which there was more or less salt in a wet state upon the floor, caused by emptying ice and salt from ice cream freezers.   It was an old tank, which showed considerable rust, and which had been affected to the extent of scaling.   It had been painted by order of defendant upon the rust without removing the

rust or scale, and without examination as to condition. A photograph shows that the bottom of the tank was shattered in the explosion, and there was testimony showing that the metal of the bottom had become very thin, which was easily ascertainable after the explosion. There was testimony that new tanks were tested at the factory to the point of 1,000 pounds cold water pressure to the square inch, that similar tanks had been put under 250 pounds pressure, and on this occasion 150 pounds was contemplated.

*Negligence of Berlin.* Berlin must be taken to have been competent to charge this tank. It is urged by the defendant that circumstances show that the accident was due to an overcharge. It appeared that in charging the tank one drum was exhausted, and Berlin coupled the copper pipe to another drum, and there was testimony that the gauge showed a pressure in the tank of 102 pounds at that time. Mr. Brooks, a member of the police force, arrived about 15 minutes after the explosion, and stated that while there he noticed the gauge, which registered 220 pounds. If this is true, it would seem obvious that the drum was open long enough to create such pressure. Counsel for the defense urge, however, that it does not follow that such a pressure was raised in the tank, explaining that it might have come from the freezing of the second valve which would be the result of a too rapid flow of gas, and might occur before the tank was charged to such pressure. On the other hand, it is suggested that the tank may have had a much higher pressure, which was afterwards diminished to 220 pounds at the gauge through escape through the exploded tank. It is undeniable that there is much reason for the conclusion that the explosion was due to Berlin's carelessness.

*Jury's Duty.* In the absence of proof to indicate an overcharge, the testimony relating to the condition of the tank would have warranted the finding that the explosion was due to the rusted and weakened condition of the tank, which was properly chargeable to the master's neglect.

It was therefore a question for the jury unless the testimony can be said to have conclusively shown that it was due to another cause, and not to that. Under this proof, that cannot be said, for two reasons: (1) The proof does not show conclusively that Berlin was negligent; (2) it may have been that, but for the weak tank, the pressure actually permitted, though excessive and due to Berlin's negligence, would not have exploded the tank. Thus, if they should find that the tank exploded at the 220-pound mark, they might also find that the tank would not have exploded had it not been weak through rust. We see no way to sustain the conclusion that the accident was due to the negligence of Berlin alone, or to say that there was so much uncertainty that the cause was necessarily a mere matter of conjecture.

Fellow-Servant. There was proof in this case that the deceased was sent to the basement for instruction. Berlin was the man selected to represent the master in giving this instruction. If this was true, and in giving the instruction (or, in other words, showing him how to operate the apparatus) the deceased was killed through Berlin's negligence, it was the master's act, for it would be a strange conclusion that the man who was a representative of the master to illustrate for the purpose of instruction ceased to be such and became a fellow-servant when an accident resulted from his negligent illustrative operation. Whether it was conclusively proved that he was sent to instruct we do not determine, but there was testimony of that kind, and, if disputed, the question was for the jury. We have often held that one who in the performance of his ordinary duties is a fellow-servant with the novice may be directed to perform duties, in the way of instruction or warning, for which the master is responsible and which he cannot escape liability for, if negligently performed or omitted, by delegating the duty to another, who may be a fellow-servant. This is an uncommon if not a novel question, but we think it a plain one on principle, and, if it can be said that while operating a ma-

chine for the purpose of instruction, his negligence in such operation is the cause of injury to the novice, the master is certainly liable. It follows, therefore, that if it was due to either cause the defendant was chargeable, and it would be an unjust rule to require a case to be taken from the jury in favor of defendant, no matter how great the difficulty of determining which it really was.

We also think that there was evidence from which the jury might have found that deceased contributed to his wife's support, up to the time of his death, had that question been submitted to them.

The judgment is reversed, and a new trial ordered.

MOORE, McALVAY, BROOKE, and STONE, JJ., concurred.