## CLARENCE AND JENNIE RUTH INGERSON v. SHATTUCK SCHOOL.[1]

December 18, 1931.

Nos. 28,541, 28,542.

*Snyder, Gale & Richards,* for appellant.
*Drake & Day,* for respondents.

OLSEN, J.

Appeals by defendant from the judgment in each of two cases.

One case is brought by Jennie Ruth Ingerson to recover damages for personal injury claimed to have been caused by negligence on the part of the defendant. The other case is brought by Clarence Ingerson, husband of Jennie, to recover for the loss of the services and companionship of his wife and for expense incurred by him for

[1]Reported in 239 N. W. 667.

domestic servants to perform services in the home while his wife was incapacitated. There was a verdict for plaintiff in each case. Defendant moved for a directed verdict in each case at the close of the evidence, and thereafter moved for judgments notwithstanding the verdicts. The motions were denied.

Defendant is a corporation owning and operating a secondary school for boys of high school age at Faribault in this state. It has an attendance of about 250 students. Military drill is a part of the training, and games and athletic sports are conducted under the supervision of the school. The school has grounds for these games and sports.

On September 28, 1929, a football game was played on these grounds between the school football team and a football team from the State Teachers College of Mankato. The football playing field was marked out on the ground by white chalk lines, plainly visible, and was some 360 by 160 feet in area. There were between 200 and 300 spectators at the game. Sixty of these had paid an admission fee of 50 cents each. The balance of the spectators apparently were students and school employes, who were admitted free. The game was not an important one attracting much public interest. On one side of the playing field were some bleacher seats for spectators. The seating capacity is in dispute, but it was not large and the spectators were not required to occupy the seats. There was no fence or rope around the playing field. The game was not conducted for the purpose of any profit to the school. Any small receipts were no doubt to be applied on incidental expenses in connection with the games. The spectators were warned to stay outside of the playing field, outside of the chalk marks around the field, and generally did so. Just before the close of the game Mrs. Ingerson and other spectators were standing from two to five feet outside of the chalk line on the side of the field. A player of the Mankato football team, carrying the ball, was making an end run and was tackled by one of the Shattuck players a few feet inside the field line near where Mrs. Ingerson was standing. The two players tumbled over and rolled across the line and against Mrs. Ingerson's legs, resulting in a fracture of one leg.

1. Plaintiffs' claims rest on the proposition that the defendant was negligent in not fencing or otherwise protecting the playing field and in not warning spectators to stand farther back from the lines of the field. Both plaintiffs were among those who had paid admission to the grounds.

Plaintiffs seek to invoke the rules as to the care required of operators of dangerous amusement devices, such as roller coasters, and in the operation of theaters and the like. Ellingson v. World A. S. Assn. Inc. 175 Minn. 563, 222 N. W. 335. They cite in addition to the Ellingson case, Wells v. Minneapolis B. & A. Assn. 122 Minn. 327, 142 N. W. 706, 46 L.R.A.(N.S.) 606, Ann. Cas. 1914D, 922, where a spectator was injured by a batted baseball; and Scott v. Michigan Athletic Assn. 152 Mich. 684, 116 N. W. 624, 627, 17 L.R.A.(N.S.) 234, 125 A. S. R. 423, 15 Ann. Cas. 515, where a spectator was injured by the collapse of a grand stand. In each of these cases the injury was caused by some unsafe appliance or dangerous instrumentality. A batted or swiftly thrown baseball is dangerous and liable to injure anyone struck by it. Here the only instrumentality used was a football. Under all ordinary circumstances a football, even when kicked or thrown, is not likely to cause injury; neither was Mrs. Ingerson injured by a football. No case has been called to our attention where injury from coming in contact with the body of a football player has been involved. Under some circumstances liability for such an injury might perhaps arise. But we are concerned here with the broader question of whether defendant was negligent. The evidence shows that it was not customary at this school or at the smaller schools or colleges in that part of the state to fence or rope off the playing field. It was sometimes done when important games drawing large crowds were held. Inferentially such barriers were used more to keep the spectators off the playing field than for the purpose of protecting spectators. A rope around the field would not prevent players from rolling under it, and a fence in front of a spectator, if the players crashed into it, might result in greater injury than if there were no fence.

The defendant owed to plaintiffs the duty of exercising ordinary or reasonable care under the circumstances shown, the degree of care depending upon the situation shown. Klaman v. Hitchcock, 181 Minn. 109, 231 N. W. 716. There was no such dangerous situation or apparent danger as to require a high degree of care.

A person or party is not liable on the ground of negligence for an act or omission if it could not reasonably have been foreseen under the circumstances that such act or omission was likely to result in injury to anyone. A person is not liable for consequences which are merely possible, but only for consequences which are probable. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) p. 1096, § 7008, and the long line of cases cited in notes 25 and 26.

The unfortunate injury to Mrs. Ingerson, under the circumstances here shown, was not one which the defendant reasonably could or did anticipate or foresee.

2. Mrs. Ingerson had attended three football games prior to this one. It is shown to be a more or less common occurrence for the football and for players to cross and go outside of the lines of the playing field. Prior to the accident, that had happened a few times in this game. Defendant contends that Mrs. Ingerson's knowledge of the situation was such that she assumed the risk of any injury resulting. We do not so hold as a matter of law.

3. Negligence is charged on the ground that defendant failed to provide safe and proper seats for spectators. It is sufficient to say that it is not shown that Mrs. Ingerson sought to obtain one of the seats provided or requested to be provided with a seat, or that she would not have had a seat in the bleachers if she had gone there for that purpose. Her son was the captain of the Mankato team and was seated on a bench away from the bleachers, and she went there to be with or near him.

4. Negligence is also charged on the ground that the defendant failed properly to police and patrol the grounds. The athletic director of the school and other school employes were there. In the situation shown it was not negligence to fail to provide other police or patrol men at this game.

The judgments are reversed with direction to cause judgments to be entered in favor of defendant.

LORING, J. (dissenting).

I dissent.

The defendant conducts a private school, and if as such it chooses to conduct competitive games and for an admission fee invite the public to attend, it should be bound to exercise towards its paid guests a degree of care commensurate with the hazards to which they are exposed. The majority opinion concedes this, but holds as a matter of law that defendant exercised due diligence. With that conclusion I cannot agree. It is true that a football in itself is not a particularly dangerous instrumentality, but a football was not what caused or might be anticipated to cause damage here. A football team is however a highly organized machine which functions with great force and violence. When in play the bodies of the players, either singly or in groups, become human projectiles highly dangerous to any ordinary person against whom they happen to be launched. The players are blind to every consideration other than the advancement of the ball and the interests of their team. They have no eyes or ears for anything else. It is shown by this record that the strategy of the game often requires the carrying or forcing of the ball beyond the side lines. Under such circumstances was it a question for the jury whether the defendant exercised care commensurate with the hazards to which spectators, especially women, were exposed by the game? Plaintiffs' evidence tended to show that defendant failed so to police or otherwise regulate spectators as to keep them a reasonable distance from the side lines so that they would not be injured by players running at full speed with the probability of being tackled at or near the side lines. Such plays were likely to result in players' running or rolling violently outside the bounds of the field proper. If people stood near the side lines they were likely to be hurt when such players collided with them.

The record shows that notwithstanding it charged a substantial admission fee, defendant took no precautions whatever as to the

spectators near the side lines. They were cautioned, if at all, to keep outside the side lines, but this warning would by implication be an assurance of safety if they complied. It is true that a rope would not have prevented players from rolling under it, but a rope suitably placed and policed would have kept the spectators out of range of the violently running or rolling players. A fence may have been too much to ask of defendant, but a properly built one would have been absolute insurance against broken limbs or other injuries to spectators. Proper policing or warning of danger would probably have been sufficient protection. It is true that defendant showed that it was customary not to rope the grounds at the less important games in the smaller schools, but this is merely evidence of diligence, doubtless given its due weight by the jury. It is not conclusive. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7049, note 91. What ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not. The usual way may be a negligent way. I think this court goes too far in saying that all reasonable minds would concede that defendant was in the exercise of due care. I think that persons of ordinary prudence familiar with the game would anticipate just such collisions as this.

If the defendant went into the business of charging admission to its games, it should be held to the ordinary standards of care towards the spectators that apply to others so engaged. If the defendant did not care to police its grounds, it could transfer the activity to an athletic association. I feel that the case was for the jury on whether defendant exercised care commensurate with the hazards, and I agree with the majority that the injured woman was not necessarily guilty of contributory negligence. She might, with her limited experience as an observer of such games, fail to realize the hazard of standing with the crowd too near the side lines.