WILLIAMS *v.* WOOD.

1. NEGLIGENCE—INJURIES FROM OUTDOOR SPORTS—GENERAL RULE AS TO RECOVERY.

Generally, recovery for injury resulting from accident attendant on outdoor sport may be had only if injury is result of negligence that could and should have been avoided by use of ordinary care.

2. SAME—INJURY TO FISHERMAN'S GUIDE FROM CASTING—QUESTION FOR JURY.

Negligence of fisherman, in boat with guide, in making cast which hooked guide in eye, should have been submitted to jury, where evidence was sufficient to present question upon which reasonable minds might differ.

3. SAME—PRESUMPTION—EVIDENCE.

Presumption of negligence may arise from competent evidence,

4. EVIDENCE—ADMISSIONS.

Testimony as to admission by fisherman, which he denied, that he was in fault in making cast which hooked guide in eye, *held*, admissible for what it was worth.

5. NEGLIGENCE—INJURY TO FISHERMAN'S GUIDE—ASSUMPTION OF RISK.

Guide hooked in eye by fisherman while casting may recover therefor only if fisherman was negligent, and although guide did not assume risks of dangerous occupation, he knew that accidents frequently occur, and therefore did not need to be specially warned of danger.

Appeal from Kent; Perkins (Willis B.), J. Submitted June 22, 1932. (Docket No. 128, Calendar No. 36,613.) Decided October 3, 1932.

Case by Louis Williams against Frank F. Wood for personal injuries alleged to have been caused by defendant's negligence while fishing. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed, and new trial granted.

*Joseph R. Gillard* (*George S. Baldwin*, of counsel), for plaintiff.

*Clare J. Hall,* for defendant.

BUTZEL, J. Louis Williams of Evart, Michigan, plaintiff, was engaged to work about the cabins and to act as a fisherman's guide by his fellow townsman, Spencer Postal, at the latter's fishing and hunting camp located in the vicinity of a number of small lakes in northern Ontario, not far from the Canadian Soo. Plaintiff was 21 years of age, six feet four inches in height. Fishermen who went to Postal's camp employed and paid the guides furnished them. On June 11, 1930, defendant, Frank F. Wood, and a companion, both experienced fisher-

men, employed plaintiff to guide and row a boat near the shore of Devil's lake. While fishing, defendant sat in the bow, his companion in the stern and plaintiff in the middle of the boat, about five or six feet away from defendant. Plaintiff, with his back towards defendant, rowed the boat parallel with and not far from the shore, towards which the two fishermen cast at right angles to the boat.

Instead of using his own rod, defendant borrowed from Postal a steel one, about 5 feet·in length. It was equipped with a reel, around which 25 to 30 yards of line were wound, and at the end of the line, in the order named, were a sinker, a one-inch copper leader, a spinner, consisting of a metal rod on which two spoons were attached, and a trout hook baited with an angleworm. The length of the tackle from the end of the hook to the farthest end of the sinker, when pulled taut to the end of the pole, according to defendant's testimony, is 10 to 15 inches. The reel is operated with the thumb used as a brake. When the cast is made, the thumb is loosened, the line runs speedily out, and when the line reaches the spot aimed at by the fisherman, he pushes his thumb against the reel and the lure drops into the water. When casting, a good fisherman keeps his eye on the spot at which he is aiming.

After the party had been fishing for less than an hour, during which defendant had no success, while his companion caught two speckled trout, defendant attempted another cast. In so doing, the tip of his rod first struck plaintiff on the side of the head and instantly thereafter the hook penetrated his eye, causing such severe injuries that the eye had to be removed from its socket. After .the hook struck plaintiff, the rod was dropped down to the side of the boat. Only about four feet of line had been unwound and the cast did not leave the confines of

the boat. It is conceded that there was no back lash, no sudden movement of the boat, nor is it claimed that the line had become tangled or snarled.

Plaintiff attributes the accident wholly to defendant's negligence. The latter admits' that it would have been dangerous to make a side cast with defendant in the middle of the boat. He claims that the very fact that plaintiff was hooked in the eye indicates that he made an overhand cast, and that the injury was due to an accident for which he should not be held liable in damages. It appears to be conceded that if the accident had been caused by a sudden movement of the boat or a back lash, and the cast had been overhand, plaintiff would not be entitled to recover. Plaintiff claimed that the accident was due to a side cast, but admitted that he was unable to see how the cast was made, as his back was turned toward defendant. He claims, however, that even if it had been an overhand cast, it was so negligently made by defendant, an experienced fisherman, as to render him liable for the untoward results. Plaintiff claimed, and defendant, called as an adverse witness under the statute (3 Comp. Laws 1929, § 14220), denied, that, immediately after the accident, defendant said: "It was my fault I hooked you," and that it would not have happened had he used his own pole. An Ontario lawyer testified that under the laws of the province, defendant cannot raise a defense under any theory of assumption of risk by the plaintiff.

At the close of plaintiff's proofs, the trial judge directed a verdict for defendant, holding that, in any event, the cause of the accident could only be determined by pure conjecture, and that the circumstances made it extremely improbable that the cast was a side one.

A number of questions are raised on appeal. The case presents an unusual state of facts. The testimony is very meager, and neither from the briefs nor a diligent search on our part have we been able to find any case involving similar factual set-up. Analogous ones are referred to. The golf cases are not helpful, for both players, caddies, and spectators, knowing that balls are apt to go wayward on the wide expanse of a golf links, can and should be on guard so as to avoid being struck by a ball or a club. The facts in the cases differ and in some of them golfers have been held liable. In *Cleghorn* v. *Oldham*, 43 Times L. R. 465, and *Castle* v. *St. Augustine's Links, Ltd.*, 38 Times L. R. 615, the duty is imposed upon players to use care with regard to the safety of others about them. Also see *Schlenger* v. *Weinberg*, 107 N. J. Law, 130 (150 Atl. 434, 69 A. L. R. 738); *Biskup* v. *Hoffman*, 220 Mo. App. 542 (287 S. W. 865). These cases impose a duty upon the golfer to call out a warning to those on the links in the direction of his intended shot, or in the actual course of the ball. In the instant case, such a warning would have been useless, for plaintiff, with his back towards defendant, could not watch him cast. The liability of a golfer for poor shots is discussed in ''Legal Questions Relating to Golfing and Golf Courses,'' 31 Scottish Law Review, 194. It has been held repeatedly that a golfer is not liable for making a poor shot, and that persons playing the game take all the usual risks that attend it. See *Stober* v. *Embry*, 243 Ky. 117 (47 S. W. [2d] 921); *Benjamin* v. *Nernberg*, 102 Pa. Sup. Ct. 471 (157 Atl. 10). In *Everett* v. *Goodwin*, 201 N. C. 734 (161 S. E. 316), it was held that where the evidence was conflicting and there was testimony that the player had failed to shout ''fore,'' negligence was a jury question.

The baseball cases hold, as a rule, that a player cannot be held liable to a spectator struck by a foul ball. *Brisson* v. *Minneapolis B. & A. Ass'n,* 185 Minn. 507 (240 N. W. 903). In *Ingerson* v. *Shattuck School,* 185 Minn. 16 (239 N. W. 667), defendant was absolved from liability for injuries suffered from a collision with two football players who rolled off the field while engaged in a hard tackle.

The hunting cases also, while claimed to be analogous, are not pertinent to the facts in the case, for the law exacts a much greater degree of care from persons using firearms. See *Chaddock* v. *Tabor,* 115 Mich. 27; *Bahel* v. *Manning,* 112 Mich. 24 (36 L. R. A. 523, 67 Am. St. Rep. 381), and also the cases collected and annotated in 53 A. L. R. 1205.

The nearest approach to the instant case is that of *Toca* v. *Rojas,* 152 La. 317 (93 South. 108). The court was divided as to whether there was a showing of negligence. The prevailing opinion held that there was grave doubt whether it was the hook of defendant's son that caused the injury, and there was no proof of negligence on his part. The facts in the case are so dissimilar from those in the instant case that it is not helpful to us.

The general rule that may be deduced from the cases hereinbefore cited is that certain risks of accident attend all outdoor sports and recovery may be had only if an injury is the result of negligence that could and should have been avoided by the use of ordinary care. It seems to be conceded by both parties in the instant case that, if defendant made a side cast within the small confines of a rowboat, resulting in an injury to plaintiff, the latter should recover. We believe that there was at least a sufficient showing upon which reasonable minds might differ as to whether defendant was negligent in making the cast. The case, therefore, should have been

submitted to the jury for determination. The trial judge, in directing a verdict, stated that the rule of law is:

"That where an inference can be drawn that would make an act an innocent one, and that inference is as reasonable as an inference drawn from the same facts which would create a liability, that no liability exists. In other words, cases are tried upon reasonable certainties and not upon pure speculation and inferences drawn."

The foregoing statement appears in a *dictum* in *Knapp* v. *Railway Co.,* 114 Mich. 199, where intestate received injuries when coupling a freight train at a street crossing. Plaintiff claimed that deceased caught his foot in the planking between the plank and the rail, and defendant contended that deceased stumbled against the ends of the planking and was carried forward by the cars and then hurled under the train, and that, in any event, the cause of the accident was conjectural. The court, however, refused to direct a verdict. The *dictum* quoted does not support the contention that, when there are two probable causes, the case must be taken from the jury when there is a much stronger probability supported by competent testimony that the cause relied upon by the plaintiff was responsible for the accident.

In *Manning* v. *Railway Co.,* 105 Mich. 260, where the mutilated body of plaintiff's intestate, a brakeman, was found near the right of way, it was claimed that, while leaning from the side of a car, he was struck by a tree close to the tracks. There was also a possibility that he had fallen from the car. However, there was no direct evidence whatsoever as to how the accident occurred. Inasmuch as the cause of death was purely conjectural, the direction of a

verdict for defendant in the lower court was upheld by this court, notwithstanding a very vigorous dissenting opinion by Mr. Justice MONTGOMERY.

In *Alexander* v. *City of Big Rapids,* 70 Mich. 224, we held:

"If it was left 'very doubtful' what caused the injury upon the proofs, certainly, then the case was one for the jury upon its facts, and should not have been taken from them upon that point. No one witnessed the accident, and the testimony was somewhat circumstantial upon that question."

In *McDonnell* v. *Central Drug Co.,* 160 Mich. 455, where the cause of the accident was far more uncertain than in the present case, we held it improper to direct a verdict on the ground that the cause was conjectural. To like effect are: *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271 (18 Am. St. Rep. 441); *Wendt* v. *Village of Richmond,* 164 Mich. 173. A presumption of negligence may arise from competent evidence. See *McLean* v. *Railroad Co.,* 137 Mich. 482 (17 Am. Neg. Rep. 76); *O'Neill* v. *James,* 138 Mich. 567 (68 L. R. A. 342, 110 Am. St. Rep. 321, 5 Ann. Cas. 177, 17 Am. Neg. Rep. 561); *Fuller* v. *Magatti,* 231 Mich. 213; *Bacon* v. *Snashall,* 238 Mich. 457; *Eaton* v. *Consumers Power Co.,* 256 Mich. 549; *Peterson* v. *Cleary,* 257 Mich. 640; *Oleksza* v. *Nolan,* 258 Mich. 240.

In the present case, plaintiff's claim is strengthened by the fact that he apparently was hit on the side of the head by the tip of the pole. We do not agree with the trial court that it was improbable under the circumstances that plaintiff was hit by the tip of the rod in the course of an improper side cast, for when we take into consideration the fact that it was a five-foot pole with 10 to 15 inches of tackle hanging from it, that defendant very likely

extended his arm to make the cast, and that some of the line may have been unreeled, it would be possible for the tip of the pole to strike plaintiff. Moreover, the undisputed testimony, as distinguished from the inferences the trial court drew, shows that plaintiff was hit on the side of the head by the tip of the pole before the hook entered his eye. The question as to whether the cast was negligently made raises a question of fact that should have been submitted to the jury. As the case is being remanded for a new trial, we might add that the claimed admission on the part of defendant was not improperly received for whatever it was, worth. *Simonson* v. *Huff*, 124 Wash. 549 (215 Pac. 49); *Kentucky Distilleries & W. Co.* v. *Wells' Guardian*, 149 Ky. 275 (148 S. W. 375). Notwithstanding the fact that, under the Ontario law, plaintiff did not assume the risks of a dangerous occupation, he well knew that accidents frequently occur to fishermen, and did not need to be especially warned of the dangers. He can recover only if defendant was negligent in making the cast. *Rudd* v. *Bell*, 13 Ont. Rep. 47; *Shendra* v. *Railway Co.*, 21 Man. L. R. 622.

Under the circumstances, we believe that the question should have been submitted to the jury.

The judgment of the lower court is reversed, with costs to plaintiff, and the case remanded for a new trial.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.