WALTANEN *v.* WIITALA.

1. AUTOMOBILES—PASSENGERS—DRIVING UNDER INFLUENCE OF INTOX-·
     ICATING LIQUOR—ASSUMPTION OF RISK.
          Plaintiff passenger as a matter of law assumed the risk of in-
          jury, where in the pattern of previous conduct and after
          several hours spent in the consumption of liquor after de-
          fendant host was under the influence of intoxicating liquor,.
          plaintiff entered defendant's car and was injured when the·
          vehicle went out of control at a curve while defendant, although
          driving at an excessive speed, was also engaged in tuning in
          the car radio.

.2. NEGLIGENCE—WILFUL AND WANTON MISCONDUCT—ASSUMPTION OF·
     RISK.
          Assumption of risk is a defense to negligence whether it be·
          ordinary negligence or such negligence plus a wilful and
          wanton disregard for public safety which go to make up the·
          statutory gross negligence or wilful and wanton misconduct
          required under the guest passenger act (CLS 1956, § 257.401)..

---

REFERENCES. FOR POINTS IN HEADNOTES

·[1] 5A Am Jur, Automobiles and Highway Traffic §§ 792, 793.
     Guest's knowledge that automobile driver has been drinking as pre-
          cluding recovery, under guest statutes or equivalent common-law·
          rule. 15 ALR2d 1165.
·[2] 5A Am Jur, Automobiles and Highway Traffic § 788.
     Assumption of risk as available in action based on automobile·
          guest statute. 44 ALR2d 1342.
.[3] 38 Am Jur, Negligence § 178.
     Wanton or wilful misconduct by person killed or injured as defense
          to an action based on wanton or wilful misconduct of defendant..
          41 ALR 1379.
¦[4] 53 Am Jur, Trial § 305.

3. SAME—CONTRIBUTORY NEGLIGENCE.
   An actor whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the actor's safety is a contributing cause of the actor's bodily harm.

4. CONSTITUTIONAL LAW—JURY TRIAL.
   A litigant has a constitutional right not to have a question go to the jury, where the evidence is such that as a matter of law no recovery may be had.

   BLACK, J., dissenting.

Appeal from Houghton; Brennan (Leo J.), J. Submitted June 10, 1960. (Docket No. 46, Calendar No. 48,502.) Decided October 13, 1960.

Case by Felix Waltanen against Wilmer Wilho Wiitala for personal injuries sustained while passenger in defendant's automobile. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Wisti & Jaaskelainen,* for plaintiff.

*Wright & Zinn,* for defendant.

SMITH, J. The point here is a narrow one. It has to do with a directed verdict by the trial judge upon the ground of assumption of risk.

The suit arises out of an automobile accident. The plaintiff, Felix Waltanen, was a passenger in a car driven by his friend, defendant Wilmer Wiitala. The ride during which the accident occurred followed an evening of drinking, and followed, as well, a pattern of conduct that had been established for some time. Plaintiff's statement of facts tells us that, during the spring and summer of 1956, the young men (another friend, Wesley Maki, was included) made a practice of going out together in the evenings in the pursuit of pleasure and ex-

citement: "They frequented bars and taverns and had a mutual interest in the pursuit of female companionship."

On the evening in question, plaintiff and Mr. Maki started drinking about 9:30 p.m. in a bar in Toivola, Michigan. They enjoyed beer and whiskey together until about 11 p.m., when they were joined by defendant. The 3 friends then drank beer and rum and cokes. Towards closing time they "were downing them real fast." As plaintiff put it, "We were just putting them down the hatch," trying to beat the clock. When the waitress told them it was closing time they ordered more drinks, 2, or maybe 3, of rum and coke. They left about 2:30 a.m. with a case of 24 bottles of beer. Defendant drove them to a gasoline station nearby, where they met other friends, and the beer was drunk. Defendant does not remember having anything to drink at the filling station. Other testimony credited him with from 2 to 4 or 5 bottles.

The friends now left the station. Shortly after they left it, defendant increased the speed of the car. Just prior to the accident he was driving at a speed of from 95 to 100 miles per hour, steering with one hand, tuning the car radio with the other, and looking down at the radio. They approached a gradual curve. This particular stretch of the road was wavy and rather bumpy. The right wheels of the automobile left the pavement. In regaining the pavement, the automobile rolled over, and skidded 171 feet on its top. Plaintiff was injured. At the conclusion of all the testimony the court ruled that plaintiff had assumed the risk as a matter of law and could recover nothing.

Plaintiff's appeal argues that the jury should have been permitted to pass upon the question of assumption of risk, stating that "all of the Michigan cases which have been involved with the question of the

legal defense of assumption of the risk appear to have been jury questions," citing several cases, including *Davis* v. *Hollowell,* 326 Mich 673 (15 ALR2d 1160). In the *Davis Case* we did approve the sending of the case to the jury, but the facts were not as extreme as those of this case. Here, in the trial court's words, the plaintiff entered defendant's car "with full knowledge of the driver's past record of careless and reckless conduct in the operation of his motor vehicle." What happened on the night in question, up to the time of the accident, was merely a repetition of what had been going on every Saturday night for some time, getting "pretty well lit," driving around the area at speeds up to 85 miles per hour, often while adjusting the radio, all without objection by plaintiff. Moreover, plaintiff knew when defendant first entered the bar that night that defendant was under the influence of liquor,[1] a condition that could not have improved, with respect to sobriety, as the evening wore on and more drinks were consumed. Despite these circumstances, and plaintiff's knowledge of defendant's driving habits upon previous Saturday nights, plaintiff re-entered defendant's car at the filling station and drove with him. He obviously assumed the risk of what happened. There is nothing peculiar about the doctrine of assumption of risk as regards a court's direction of a verdict with respect to it upon defendant's motion. Here, as elsewhere in the law, the question is simply whether or not, taking that view of the evidence most favorable to plaintiff, reasonable men could differ in respect of the question. *Dalton* v.

---

[1] Plaintiff testified as follows:

"*Q.* Now, you mentioned when you used the words 'good spirits' as describing how Mr. Wiitala felt when he came into the K & K bar. Will you tell what you mean?.

"*A.* Good spirits; what I refer to is kind of like feeling good when a person drinks lots, they get in a kind of a happy mood. That's what I mean by high spirits. That's my way of saying it. I mean feeling good."

*Grand Trunk Western R. Co.*, 350 Mich 479; *Glinski* v. *Szylling,* 358 Mich 182. Upon the facts before us, we agree with the trial judge, we have a very clear case. Verdict was properly directed.

There is a suggestion by plaintiff that assumption of risk is not a defense to wanton and gross negligence, but no reason in principle why it should not be is argued by plaintiff. It is true in *Teeter* v. *Pugsley,* 319 Mich 508, 510, there is a statement that: "In view of the rule stated in *Gibbard* v. *Cursan,* 225 Mich 311, 320, defendant's claim of error with respect to contributory negligence and assumption of risk must be denied." The statement, however, contains an error. There is no "rule" stated in the *Gibbard Case* concerning assumption of risk. We made this clear later, in *Davis* v. *Hollowell,* 326 Mich 673 (15 ALR2d 1160), in sending an assumption of risk question to the jury. The *Gibbard Case,* we pointed out, *Id.* at p 681, "contained no reference or circumstance pertaining to assumed or incurred risk."

Assumption of risk, of course, is a defense to negligence, whether it be ordinary "mere" negligence, or such negligence "plus a wilful and wanton disregard for public safety,"[2] which go to make up the statutory "gross negligence or wilful and wanton misconduct" required under the guest passenger act.[3] *Volenti non fit injuria.* Whether the defendant's conduct was reckless or merely casually negligent is immaterial, for the gist of the defense is that the plaintiff took his chances. See 4 Restatement, Torts, § 893. Here the individualism of the common law is once more at work. See Bohlen, Voluntary Assumption of Risk, 20 Harv L Rev 14.

There is an overlap between the defenses of contributory negligence and assumption of risk. But

[2] *Stevens* v. *Stevens,* 355 Mich 363, 372.
[3] CLS 1956, § 257.401 (Stat Ann 1952 Rev § 9.2101).

they are distinct—they respond to different considerations and they are different in application. Thus the habitual baseball enthusiast who is, one day, injured by a batted ball, has doubtless assumed this particular risk of injury but could not reasonably be held to have been guilty of contributory negligence in going to the ball game.[4] Should the facts before us be so analyzed as to constitute contributory negligence, plaintiff's case is not advanced, for, although "mere" contributory negligence is not a defense to wanton conduct,[5] nevertheless wanton conduct on the part of the plaintiff will be a defense to wanton conduct on the part of the defendant. The Restatement of Torts puts the principle in these words: "An actor whose conduct is in reckless disregard of his own safety is barred from recovery against a defendant whose reckless disregard of the actor's safety is a contributing cause of the actor's bodily harm."[6] In the case before us the same knowledge of past and present excesses that justified holding plaintiff to have assumed the risk, justifies holding him to be in reckless disregard of his own safety, all as a matter of law. As we pointed out in *Glinski* v. *Szylling, supra,* just as there is a constitutional right to trial by jury[7] there is also a constitutional right not to have a question go to the jury under certain circumstances, of which this case is another example.

---

[4] See Keeton, Personal Injuries Resulting from Open and Obvious Conditions, 100 U of Pa L Rev 629, 633.

[5] See cases cited in *Sun Oil Company* v. *Seamon,* 349 Mich 387.

[6] 2 Restatement, Torts, § 503(2). See, also, Chief Justice GRANT'S dictum in *Redson* v. *Michigan Central R. Co.,* 120 Mich 671, 672, wherein he hypothesizes an injury to the train crew (who had been charged with wanton conduct) arising out of plaintiff's wanton conduct. He then goes on to state the law applicable in these terms:

"It would then be gross negligence against gross negligence, wilful misconduct against wilful misconduct, and intent against intent; and in such case the law leaves both parties where they have placed themselves, and gives recovery to neither."

[7] See Const 1908, art 2, § 13.—REPORTER.

Since. the court's decision was squarely placed upon the ground of assumption of risk as a matter. of law it is unnecessary to discuss other aspects of the case.

Affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, KELLY, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred with SMITH, J.

BLACK, J. (*dissenting*). Building obiter on this sweeping dictum—

"Assumption of risk, of course, is a defense to negligence, whether it be ordinary 'mere' negligence, or such negligence 'plus a wilful and wanton disregard for public safety,' which go to make up the statutory 'gross negligence or wilful and wanton misconduct' required under the guest passenger act";

the Court affirms another judgment entered on motion in a jury-tried negligence case. Holding that the testimony presents a jury question of liability, I must dissent.

The quoted declaration is too broad, either for textbook or the case before us. The citations proffered in support (*Stevens v. Stevens,* 355 Mich 363, and CLS 1956, § 257.401 [Stat Ann 1952 Rev § 9-.2101]) arguably war upon it.[1] And our remaining precedents (*Gibbard v. Cursan,* 225 Mich 311; *Teeter v. Pugsley,* 319 Mich 508; *Davis v. Hollowell,* 326 Mich 673 [15 ALR2d 1160]) flatly deny its application to a case where, as here, the plaintiff guest has made out a case of causally connected wilful and wanton misconduct.

---

[1] *Stevens,* construing and applying the statute in corresponding circumstances of mutual intoxication and similar high speed (90 to 95 miles per hour), holds without reservation that it—the statute— imposes liability where the driver's conduct "manifests a high degree of danger, a manifest probability that harm will result therefrom, and an utter disregard of the probable consequences" (p 371).

The defense of assumption of risk originated from the contractual relation of master and servant. When judges use the expression in tort actions brought under conventional guest-host statutes, they employ it loosely for what it really is—contributory fault of equal degree. It is a "form of negligence" (see quotation from Restatement below) some courts have brought forth to meet that situation in guest-host cases where the guest is said to be equally at fault with the host. So far, however, and I submit the cited Michigan cases as proof,[2] this Court has properly refused to say that a plaintiff guest can, legally, assume the risk of reckless and wanton, or wilful and wanton, misconduct. We do apply Restatement's rule (2 Torts, § 482, subsection 2, p 1262), but that doctrine is not a matter of assumption of risk at all. It is one of contributory misconduct occasioned by the unreasonably reckless exposure of oneself to injury, and it would be a rare case where application thereof could or should be made as a matter of law. All this finds support in Restatement's "comment," quoted and applied in *Davis, supra,* at page 680, *viz*:

"The plaintiff is not barred even by that form of negligence which is called voluntary assumption of the risk. In order that the plaintiff's conduct may bar him from recovery, it is necessary that he not only know of the defendant's reckless conduct, but

---

[2] Note, in *Davis,* the placing in quotation marks of the expression "assumption of risk" (p 680) and the Court's care in confining the issue to one of unreasonably "reckless exposure" instead of the uncertainties of that which belongs properly in the law of master and servant. The writer of American Jurisprudence tells us (35 Am Jur, Master and Servant, § 293, p 715) what all scholars and quasi-scholars know:

"Few subjects of the law have a more obscure and complicated terminology than that appertaining to the doctrine of assumption of risk. Even the most casual investigation discloses a perplexing and often quite unintelligible array of propositions. Commentators usually have concluded that a reconciliation of all the statements relating to the subject is an impossible task."

also realize the gravity of the risk involved therein so that he is not only unreasonable but reckless in exposing himself to it."

If we are to graft the defense of assumption of risk into the root or stem of the general law of negligence, may not the next defendant motorist, when sued by the risk-assuming guest passenger riding in another car, employ it in bar—equally with the host driver? (Perhaps, though, in such instance, the defense will enter court under a new label, say "imputed negligence" arising from "joint enterprise," lately considered in *Sherman* v. *Korff*, 353 Mich 387 [14 NCCA3d 149].) Where a guest is killed in causal circumstances as now confront us, will not his representatives and dependent beneficiaries be held as having vicariously "assumed the risk" of that which forms the basis of their complaint? Would not the present majority opinion be one for reversal, rather than affirmance, if Mr. Waltanen had been killed that Saturday night and had left a widow and several little children as such risk-assumers? My answer is that this Court, itself, is assuming some unconsidered risks with the handing down of these opinions.

I prefer to follow those decisions, harmonizing as they do with *Davis,* to which the annotator refers (15 ALR2d 1165, 1172) as applying the doctrine of "comparative misconduct":

"Thus, while the cases are uniform in denying recovery, in a proper case, where the guest has knowledge that the driver has been drinking, they are not uniform in the rationale of their conclusion. Some courts hold that the act of the guest in riding with the driver under such circumstances constitutes contributory negligence barring recovery. Other cases state that contributory negligence is no defense to such actions but apply the doctrine of assumption of risk. While in other jurisdictions, it has been held

that if the misconduct of the plaintiff was of an approximately equal degree to that of the defendant or substantially contributed to the subsequent accident, the guest is barred from recovery. The latter defense is referred to in this annotation as the 'comparative misconduct' doctrine."

Validity of this motion for directed verdict should be tested by ascertaining whether, on favorable view, Mr. Waltanen should have anticipated—and acted in time to avoid—"the aggravated tortious conduct herein complained of" (quotation from *Davis,* p 681); in other words whether as a matter of law he was equally at fault with Mr. Wiitala. From that postulate I proceed to point out that the defendant driver assuredly was guilty of causative "aggravated tortious conduct" and that no guest—sober or suffering the Schenley shakes—should be held (by judge distinguished from jury) as having recklessly exposed himself to the incredible combination of additional reckless acts such driver performed after his car left the Phillips gas station.[3] The previous occasions of driving (while guest and host were intoxicated) at foolhardy rates of speed, produced a top pace of 75 to 85 miles per hour. This particular evening the causative rate was stepped up to 95 to 100 miles per hour; an increase of velocity

---

[3] Plaintiff testified:

"*Q.* Now, after you left the parking lot, would you tell us how Mr. Wiitala was driving?

"*A.* Well, his driving was O. K. first, Andrew—I mean Mr. Wisti— and then he started driving fast as we were near where the accident happened.

"*Q.* About how fast would you estimate he was traveling just prior to the accident?

"*A.* I would say about 95, and maybe 100, miles an hour.

"*Q.* Now, would you describe what happened?

. . "*A.* Well, Mr. Wiitala was tuning the car radio and he had his left hand on the steering wheel and was looking down at the car radio and he was tuning in this hillbilly station on Saturday night, and he was looking at the car radio.

"*Q.* Then what happened?

"*A.* That's what caused him to lose control of the car."

to approximately 150 feet per second. And it was *not* shown by the defendant burden-bearer[4] (or by any witness for that matter) that he attempted, on any occasion prior to leaving the Phillips station that final night, to do what in combination made up the immediate cause of this tragic accident, that is, attempt to drive at 95 to 100 miles per hour with one hand while the other hand and his gaze were—momentarily even—concentrated on the radio mechanism.

Does this not bring into play the same reasoning which, in *Davis*, held the real question to be one of fact? *Davis* concludes (p 681):

"While it is common knowledge that one who operates a motor vehicle after drinking liquor is more apt to be negligent than one who has not imbibed, it does not follow that wilful and wanton misconduct on his part is always foreseeable so that one who enters it will have recklessly subjected himself to the aggravated tortious conduct herein complained of. The rule, advocated by defendants that reckless exposure of oneself to risk would bar recovery, would not be applicable to the facts of the instant case. Viewing the testimony in the light most favorable to the plaintiff, she had no reason to anticipate the conduct that occurred. There was not sufficient indication of physical or mental incapacity on the part of defendant Douglas which would forewarn of the events that transpired."

In this case I would scrape off the opaque and not-yet-hardened word-varnish some judges have ap-

---

[4] The stipulated joint appendix shows that the affirmative defense of "assumption of risk" did not appear in this case until defendant moved for a directed verdict. Defendant did not plead the defense, either as assumed risk or unreasonably reckless exposure to known and anticipatory dangers, and no mention or suggestion thereof appears in the trial judge's detailed and comprehensive pretrial summary. That defendant should have pleaded the defense, in some form, as required by Court Rule No 23, § 3 (1945), appears clearly from the recent annotation entitled "Necessity and manner of pleading assumption of risk as a defense" (59 ALR2d 239).

plied uniformly over the expression "assumption of risk" and the rule Restatement ("Torts-Negligence") treats in chapter 17 ("Contributory Negligence") under the heading "Reckless Conduct."[5] The former has no place in negligence cases such as confront us here. In essence, it continues in effect from legal start to legal finish (through care and want of care of both parties) of a contractual relationship. The latter is a solidly established precept of the common law of such torts as are committed in the course of noncontracted relations. No statute gave it life, and no legislatively prescribed rule—of highway safety or otherwise—has enlarged its limited application. Its defensive scope has never been broadened—in this State at least—to the rubbery and never accurately definable doctrine of assumed risk. It is available to a defendant guilty of causally reckless misconduct when, and only when that defendant—bearing the burden, I repeat—is able to prove that the plaintiff did know from previous experience or plain threat that he would be apt to misconduct himself as causally shown; that the plaintiff realized the gravity of the risk involved therein, and that such plaintiff was both unreasonable and reckless in exposing himself to such misconduct. This is not "assumption of risk." It is, when proven, contributory fault of equal degree. And the question of presence or absence of such contributory fault is, from its very specifications, a natural one for jury determination.

I would reverse and remand for new trial.

---

[5] 2 Restatement, Torts, § 482, p 1261.—REPORTER.