SCHMIDT v YOUNGS

Docket No. 171695. Submitted June 20, 1995, at Detroit. Decided
    January 19, 1996, at 9:00 A.M.

   Frederick Schmidt brought an action in the Oakland Circuit
      Court against Robert Youngs, III, seeking damages for injuries
      sustained when a golf ball hit by the defendant, who was
      playing in the same foursome as the plaintiff, struck the
      plaintiff. The plaintiff had positioned himself in front of the
      defendant's ball, to the right of the green, and behind a tree for
      protection. After becoming impatient waiting for the defend-
      ant's shot, the plaintiff moved from his place of safety just as
      the ball was hit. The shot was shanked to the right, which the
      defendant apparently had a propensity to do, and the ball
      struck the plaintiff. The plaintiff alleged the defendant
      breached a duty to give adequate and timely warning of his
      intention to strike the ball and of its errant flight after being
      struck. The defendant sought summary disposition, alleging
      that there was no common-law or statutory duty to warn the
      plaintiff. The court, John J. McDonald, J., agreed with the
      defendant and granted summary disposition pursuant to MCR
      2.116(C)(8). The plaintiff appealed.

   The Court of Appeals held:

   1. Under the facts of this case, the defendant did not have a
      duty to issue an audible warning to the plaintiff upon striking
      his ball. The plaintiff was aware of the defendant's intention to
      hit the ball and, to the extent that the plaintiff had positioned
      himself to the right of the green and behind a tree, the plaintiff
      was not in the line of play. The granting of summary disposi-
      tion was appropriate.

   2. The trial court's passing reference to the doctrine of
      assumption of risk was appropriate under the facts of this case.

   3. The defendant owed no duty to the plaintiff to protect him
      from injuries that might result from the ordinary and ever-
      present risks of the sport of golf, as contrasted with those

REFERENCES

Am Jur 2d, Amusements and Exhibitions §§ 86-87; 97-98; Negli-
   gence § 835.
See ALR Index under Golf and Golf Courses.

injuries that might be caused by the defendant's lack of due care.

Affirmed.

MICHAEL J. KELLY, J., dissenting, stated that peremptory disposition was premature in this matter. The trial court inappropriately decided questions of fact and prematurely applied the "rules of the game" of golf, which were not supported by an evidentiary basis. The trial court erred in finding that the defendant exercised reasonable care before he struck his ball and that the risk of coming in contact with a wayward ball is a risk foreseeable during a game of golf. It was error to decide, as a matter of law, that the defendant was under no obligation to the plaintiff to avoid negligent conduct in the context of this complaint.

1. NEGLIGENCE — GOLF — DUTY TO GIVE WARNINGS.

A person who engages in the game of golf is not an insurer of the safety of others and is only required to exercise ordinary care for the safety of persons reasonably within the range of danger; a golfer who is about to strike a golf ball must, in the exercise of ordinary care, give adequate and timely notice to those who are unaware of the golfer's intention to play and who may be endangered by the play; there is no duty to give advance warning to persons on contiguous holes or fairways or to those not in the line of play if danger to them is not reasonably to be anticipated; where a person injured by the golfer's ball was in a place of reasonable safety and was aware of the golfer's intention to play the ball, an oral or audible warning would have been superfluous and unnecessary.

2. NEGLIGENCE — SPORTS — CONSENT TO RISKS.

A person may consent to the inherent risks of being a spectator or participant in a sport but ordinarily does not consent to another's negligence.

*Rifkin & Kingsley, P.C.* (by *Michael J. Kingsley*), for the plaintiff.

State Farm Fire & Casualty Company (by *Donna M. Skelcy*), for the defendant.

Before: HOLBROOK, JR., P.J., and MICHAEL J. KELLY and D. J. KELLY,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

HOLBROOK, JR., P.J. In this personal injury case, plaintiff appeals as of right from a circuit court order granting summary disposition for defendant pursuant to MCR 2.116(C)(8). We affirm.

On May 8, 1991, plaintiff and defendant were playing golf in a foursome at the Rochester Hills Golf Club. After their second shots on the first hole of play, defendant's ball was furthest from the hole, meaning that he would play next. Rather than stay behind defendant's ball, as is customary, plaintiff drove his golf cart in front of defendant's ball, parked it next to a large tree that was to the right of the green, and positioned himself behind that tree for protection. When defendant's preparation time for his shot exceeded several minutes (between two and five minutes), plaintiff's impatience led him to turn around just as defendant hit his ball. Defendant's shot was shanked to the right, which he apparently had a propensity to do, and the ball struck plaintiff in the eye, causing serious injury.

Plaintiff's complaint alleged that defendant had breached his duty to give an adequate and timely warning to plaintiff of his intention to strike the ball and of its errant flight in plaintiff's direction after being struck. Defendant moved for summary disposition, asserting that he had no common-law or statutory duty to warn. The trial court agreed with defendant and granted him summary disposition pursuant to MCR 2.116(C)(8).

I

Whether a defendant owes any duty to a plaintiff to avoid negligent conduct in a particular circumstance is a question of law for the court to determine. *Simko v Blake,* 448 Mich 648, 655; 532 NW2d 842 (1995). Where no legal duty exists, the

plaintiff has failed to state a claim upon which relief can be granted and summary disposition in favor of the defendant is appropriate pursuant to MCR 2.116(C)(8). *Schneider v Nectarine Ballroom, Inc (On Remand)*, 204 Mich App 1, 4; 514 NW2d 486 (1994).

The general rules regarding the liability of a golfer have been summarized as follows:

> A person who engages in the game of golf is not an insurer of the safety of others, and he is only required to exercise ordinary care for the safety of persons reasonably within the range of danger.
>
> Generally, one who is about to strike a golf ball must, in the exercise of ordinary care, give an adequate and timely notice to those who are unaware of his intention to play and who may be endangered by the play. Conversely, there is no duty to give advance warning to persons who are on contiguous holes or fairways, and not in the line of play, if danger to them is not reasonably to be anticipated. Also, where the person injured was in a place where he should have been reasonably safe, and he was aware of the player's intention to play the ball, an oral or audible warning would have been superfluous and is therefore unnecessary. [4 Am Jur 2d, Amusements and Exhibitions, § 87, pp 211-212 (1995 interim pamphlet).]

See also anno: *Liability to one struck by golf ball*, 53 ALR4th 282, § 2; *Williams v Wood*, 260 Mich 322, 326; 244 NW 490 (1932) (citing, in dicta, the general rules of liability in golf).

Here, there is no dispute that plaintiff knew defendant was preparing to shoot next, that plaintiff drove his golf cart in front of defendant's ball in contravention of common sense and custom, that plaintiff intended to place himself outside the line of defendant's shot by positioning himself behind a tree, and that plaintiff was struck when

he moved from his place of safety behind that tree. Under such facts, defendant had absolutely no duty to issue an audible warning to plaintiff upon striking his ball because plaintiff was aware of defendant's intention to play and, to the extent that plaintiff had positioned himself to the right of the green and behind a tree, he was not in the line of play. Cardozo had it right when he summarized the lesson to be learned from this type of case: "The timorous may stay at home."[1]

Accordingly, summary disposition for defendant was properly granted pursuant to MCR 2.116(C) (8).[2]

## II

The trial court's passing reference to the doctrine of assumption of risk was not inappropriate under these facts.

Language to the effect that a plaintiff "assumed the risk" of injury has long been misapplied and misinterpreted by the courts of this state and others. In *Felgner v Anderson,* 375 Mich 23; 133 NW2d 136 (1965), our Supreme Court conceded that, in a long line of precedent, it had inadvertently broadened the scope of the doctrine of assumption of risk beyond its proper boundaries. Hence, the Court held that assumption of risk may not be asserted as a defense in an ordinary negligence case, except in limited circumstances consistent with the doctrine's common-law origins. *Id.* at 56.

Recognizing the inexactness surrounding its use,

[1] *Murphy v Steeplechase Amusement Co, Inc,* 250 NY 479, 483; 166 NE 173 (1929).

[2] Given that certain facts cited in this opinion were not in the parties' pleadings, but are not in dispute because of statements made by counsel at the motion hearing and in their briefs, summary disposition would also be appropriate under MCR 2.116(C)(10).

some courts have divided the assumption of risk doctrine into its "primary" and "secondary" senses. *Felgner, supra* at 54, citing *Meistrich v Casino Arena Attractions, Inc,* 31 NJ 44; 155 A2d 90 (1959). In its "primary sense," assumption of risk means that either the defendant owed no duty or did not breach any duty owed to the plaintiff, while, in its "secondary sense," the doctrine is used as an affirmative defense to an established breach of duty, i.e., the plaintiff's contributory negligence. *Felgner, supra.* The fallacy of the doctrine's "secondary sense" is widely recognized, leading to its banishment, yet the bench and bar continue to " 'cling to the terminology of assumption of risk and continue to be misled by it.' " *Id.* at 55, quoting *McGrath v American Cyanamid Co,* 41 NJ 272; 196 A2d 238 (1963).

Pertinent for our purposes, the *Felgner* Court, *supra* at 45, n 6, explained:

> Another type of case falling within this general classification, where assumption of risk is [inappropriately] used to limit the scope of a defendant's liability, is the sport spectator case. Although there is authority for the proposition that a spectator injured while attending a baseball game, *e.g.,* by being struck by a ball, may be met with the affirmative defense that he "assumed this particular risk of injury," *Waltanen v Wiitala,* 361 Mich 504, 509 [105 NW2d 400 (1960)], the correct rule is stated in *Williams v Wood,* 260 Mich 322, 327 [244 NW 490 (1932)]:
>
> "The general rule that may be deduced from the cases hereinbefore cited is that certain risks of accident attend all outdoor sports and recovery may be had only if an injury is the result of negligence that could and should have been avoided by the use of ordinary care."
>
> The correctness of this statement may have been obscured by the fact that elsewhere in the opinion

the Court implicitly approved the use in such cases of the terminology of assumed risk. *E.g.*, 260 Mich 322, 330.

Thus, analysis indicates that the spectator's suit is barred not by his assumption of risk but rather by a lack of negligence on the part of the park owner. This, of course, is in the ordinary instance of a batted ball flying into unscreened stands. Certainly the situation would be different if a spectator sitting in a screened portion of the stands were injured because a batted ball passed through a hole which the park owner had neglected to repair. Then the owner might be liable for negligence and the spectator would not be barred by any "assumption of risk."

Simply put, one may consent to the inherent risks of being a spectator or participant in a sport, but one does not ordinarily consent to another's negligence.

Here, defendant owed no duty to plaintiff to protect him from injuries that might result from the ordinary and ever-present risks of the sport of golf, as contrasted with those injuries that might be caused by defendant's lack of due care. *Felgner, supra* at 43. To the extent that plaintiff's injury was not the result of any breach of duty by defendant, the assumption of risk doctrine played a role only in its "primary sense."

Affirmed.

D. J. KELLY, J., concurred.

MICHAEL J. KELLY, J. *(dissenting).* The majority affirms a circuit court order that granted defendant's summary disposition motion pursuant to MCR 2.116(C)(8). I would reverse.

On May 8 or May 18, 1991, plaintiff and defendant were playing golf in a foursome at the Rochester Hills Golf Club, Oakland County, Michigan.

Plaintiff, Frederick Schmidt, was paired in a motorized or mechanized golf cart with Ken Kraus and defendant Robert Youngs was paired in another cart with Earl Giraldi. An injury occurred on the first hole of play. All players had hit their tee shots and all players save defendant had hit their second shots down the fairway toward the green and were proceeding to make their third and hopefully final shots to the green. Defendant's second shot was off the fairway to the right and short. Defendant's cart was driven to the area where defendant's ball had landed. Plaintiff drove his cart up to the front of the green but off in the rough so that the rear of plaintiff's cart was backed up to a tree. Defendant was away, being farther from the green than plaintiff, and it was therefore defendant's turn to hit. When defendant struck the ball, it hit plaintiff.

Plaintiff claims that defendant initially warned plaintiff that defendant was going to hit his shot but then waited approximately three minutes before actually taking his shot without making a second or more timely warning. Plaintiff also claims that defendant had a propensity to slice or shank the ball and that defendant while twenty to seventy yards away from the green and thirty yards away from plaintiff, shanked the ball causing it to go from its intended direction toward the green to a direction toward the plaintiff. Defendant claims that he not only warned plaintiff before he took the shot, but again warned him after he hit the shot and saw the ball heading in plaintiff's direction. Both parties attached deposition testimony to their appellate brief to support their divergent claims, but because neither party provided these exhibits to the trial court for its consideration, the exhibits cannot be considered by this Court on appeal. *Harkins v Dep't of Natural*

*Resources,* 206 Mich App 317, 323; 520 NW2d 653 (1994); *Nationwide Mutual Ins Co v Quality Builders, Inc,* 192 Mich App 643, 648; 482 NW2d 474 (1992).

The only issue on appeal is whether the trial court erred in granting summary disposition, that is, whether on the basis of the pleadings alone plaintiff failed to state a claim upon which relief can be granted. MCR 2.116(C)(8), (G)(5). For purposes of deciding defendant's motion under MCR 216(C)(8), the trial court had only plaintiff's complaint and defendant's answer to review. The majority has gone far beyond the four corners of those pleadings and has, I believe, inappropriately reinvigorated the doctrine of assumption of risk in Michigan. I cannot agree that, as a matter of law, a golfer hit by a ball struck by his playing partner has no cause of action for injuries because his playing partner, the striker of the ball, has no duty to warn of his intention to strike the ball. I think peremptory disposition was premature in this matter.

I believe the circuit court erred when it found:

> (1) Defendant exercised reasonable care before he struck his golf ball; and
> (2) That the risk of coming in contact with a wayward ball is a risk foreseeable during a game of golf.

Before its ruling, the court confused the issues of pleading with issues of proof and injected the element of assumption of risk. The court stated:

> . I'm of the opinion that—I don't know whether Michigan—Michigan doesn't have the assumption of risk anymore, do they? . . . I don't think so, but it's almost like an assumption of risk when you get involved in certain sports. It appears to me . . . if

in fact he were in the line of the shot wherever that may be or reasonably within the line of the shot, or if he were in a different foursome and he was unaware that a person was behind him hitting the ball. And I think there's a separate duty that may be owed to participants in sports · as there would be if he were—as I said, either hitting a golf ball in his backyard or something, or even if your client was playing in another foursome.

But I happen to agree that the case of *Thompson v McNeill* [53 Ohio St 3d 102; 559 NE2d 705 (1990)], it was cited by the defendant, the Ohio case, and it would appear to me that under the facts of this case, the fact that your client was in · the same foursome, went ahead of the other two, knowing that by doing so he was placing himself maybe in some danger, was not in the line of the shot period but was off to the side, in fact behind a [tree].

The principal . questions for the circuit court were not whether defendant exercised reasonable care, whether plaintiff was a member of the same foursome, whether the parties were in the line of sight, or whether they were on the fairway, in the rough, or behind a tree. The question was whether plaintiff had stated a cause of action sufficient to survive a motion for summary disposition for failure to state a claim, pursuant to MCR 2.116(C)(8). The factual context involved participants in the same foursome playing recreational golf. Plaintiff was struck in the eye by a ball hit by defendant, considerably off line, after a prolonged wait. Plaintiff claimed inadequate warning by defendant. The pivotal question is whether plaintiff could recover under principles of ordinary negligence in Michigan or whether plaintiff could recover only if intentional, reckless, or wilful misconduct precipitated the injury. I believe the trial court inappropriately decided questions of fact and prematurely

applied the "rules of the game" of golf, which were not supported by any evidentiary basis.

Plaintiff's complaint alleged only ordinary negligence, not gross negligence or wilful or wanton misconduct, but plaintiff also alleged breach of the duties of golfing conduct on the part of defendant and plaintiff should have an opportunity to present to a trier of fact the parameters of such duties and how they were breached, including, but not limited to: (a) whether recreational golfers are governed by any understandable or applicable rules of the game, either in general or specifically at the club in question, which was, in this case, the Rochester Hills Golf Club; (b) whether there was a duty on the part of a member of a foursome to warn another member of his intention to hit the ball; (c) whether that duty expired, lapsed, or was satisfied or breached if, after giving such warning, the defendant took two to five minutes to hit his ball; (d) if there are line of sight or line of flight perimeters or parameters with regard to such duties or obligations; (e) whether there is a zone of danger applicable to recreational golfers in the same foursome; and (f) whether there are degrees of due care that vary for a known errant slicer or shanker to avoid hitting the ball if he knows or should have known that other golfers, including members of his own foursome, are in the zone of danger peculiarly applicable to his penchant for errantry.

This motion was not argued under MCR 2.116(C) (10), but was argued and decided on the basis of MCR 2.116(C)(8), whether plaintiff had failed to state a claim upon which relief could be granted. I do not think that either the trial court or the majority of this Court should decide without expert testimony or other predicate what rules of golf are applicable to recreational players. Cf.

*Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), and its progeny. I believe it in error to decide, as a matter of law, that defendant was under no obligation to the plaintiff to avoid negligent conduct in the context of this complaint.

The Ohio case that persuaded the trial court, *Thompson v McNeill,* 53 Ohio St 3d 102; 559 NE2d 705 (1990), relied heavily on assumption of risk precedent and rationale for which there is no applicable analogous precedent in Michigan. The *Thompson* opinion itself does not set forth the exact summary disposition prerequisites, but it was the equivalent of a motion under MCR 2.116(C)(10) in Michigan. All members of the foursome in *Thompson* were deposed and the dispositional facts discerned therefrom. The decision was not based on the pleadings. *Thompson* is not precedential and should not be persuasive.

I would reverse.