HOWE v DETROIT FREE PRESS, INC

Docket No. 185550. Submitted September 4, 1996, at Detroit. Decided September 27, 1996, at 9:15 A.M. Leave to appeal sought.

Virgil M. Howe brought an action in the Wayne Circuit Court against Detroit Free Press, Inc., alleging that the defendant libeled him in republishing in the Detroit Free Press a San Jose Mercury News article about the cocaine addiction of Steve Howe, the plaintiff's son and a major league baseball pitcher, and the plaintiff's alcoholism. The defendant had obtained the article from KTN News Wire, a news wire service. The defendant moved for summary disposition on the basis of the "wire-service defense," asserting that it had no duty to independently verify the accuracy of the wire-service release. The court, Sharon Tevis Finch, J., denied the motion. On motion by the defendant, the court ruled that the plaintiff was a limited-purpose public figure who would have to prove actual malice by the defendant in order to prevail. The plaintiff, acknowledging an inability to prove actual malice, stipulated the dismissal of the action. The plaintiff appealed, and the defendant cross appealed.

The Court of Appeals *held*:

The wire-service defense refines the definition of the duty of a local news media organization to avoid publishing false material. When a local media organization receives a wire-service release, it has a duty to read the release to ensure that the face of the story itself does not contain any inconsistencies. The local media organization also has a duty to refrain from publishing the news story if the news organization knows the story is false or if the release itself contains unexplained inconsistencies. The local media organization does not, however, have a duty to independently verify the accuracy of a wire-service release that is not known to be false or that on its face contains no inconsistencies.

Where, as here, a local news organization republishes, without substantial change or knowledge of falsity, a wire-service release received from a reputable news agency, the contents of which do not reasonably indicate potential inaccuracy, the wire-service defense is available, and the local news organization has no duty to

independently verify the accuracy of the wire release and cannot be negligent, *as a matter of law, for failing to do so.*
    Affirmed.

LIBEL AND SLANDER — NEWS ORGANIZATIONS — WIRE-SERVICE DEFENSE.
    A local news organization that republishes, without substantial change or knowledge of falsity, a wire-service release received from a reputable news agency, the contents of which do not reasonably indicate potential inaccuracy, may invoke in an action against it for libel the wire-service defense, pursuant to which it has no duty to independently verify the accuracy of the wire release and cannot be negligent, as a matter of law, for failing to do so.

*Lopatin, Miller, Freedman, Bluestone, Herskovic & Heilmann* (by *Richard E. Shaw*), for the plaintiff.

*Honigman Miller Schwartz and Cohn* (by *Herschel P. Fink*), for the defendant.

Before: CAVANAGH, P.J., and MURPHY and C. W. SIMON, JR.,* JJ.

MURPHY, J. Plaintiff appeals as of right the trial court's order of dismissal and entry of judgment in favor of defendant. We affirm.

This defamation action is based upon a newspaper article originally published in the San Jose (California) Mercury News on July 20, 1986, regarding major league baseball pitcher Steve Howe, son of plaintiff Virgil Howe, and his struggles with cocaine and its effect on his baseball career. In the article, reporter Mike Antonucci wrote that Steve Howe "was the eldest of five children in a family that was a prisoner of his father's drinking problems." The article also credited Steve Howe as stating that his mother was forced to serve her children powdered milk "because

---

* Circuit judge, sitting on the Court of Appeals by assignment.

his father was drinking up so many paychecks it was difficult coming up with a combined house and car payment of $84 a month." Defendant obtained the story through KTN News Wire, an international news wire service, and reprinted the article on July 23, 1986.

Plaintiff filed the instant action on February 26, 1987. Defendant requested that the trial court rule as a matter of law that plaintiff was a public figure. If plaintiff was a public figure, he would have to prove defendant acted with actual malice. See *New Franklin Enterprises v Sabo*, 192 Mich App 219, 222; 480 NW2d 326 (1991). The trial court ruled that plaintiff was a limited-purpose public figure. Thereafter, plaintiff, acknowledging that he could not prove actual malice, stipulated an order of dismissal. In a previous motion for summary disposition, defendant asserted the "wire-service defense," which we will discuss, and argued that, as a matter of law, it could not have been negligent. In that previous motion, the trial court ruled that although the wire-service defense should be recognized, there were factual questions in this case that precluded granting summary disposition on that basis.

On appeal, plaintiff challenges the trial court's ruling that he was a limited-purpose public figure. Defendant alleges that, even if plaintiff was not a limited-purpose public figure, the wire-service defense precludes liability as a matter of law. We agree with defendant and hold that even assuming, without deciding, that plaintiff is not a limited-purpose public figure, but a private figure, the wire-service defense precludes liability in this case. Therefore, because the

wire-service defense issue is dispositive, we need not address plaintiff's claim.

In a libel suit against a media defendant, a private-figure plaintiff must show that the challenged statement was false and that the media defendant was negligent in reporting it. *Howe v Detroit Free Press*, 440 Mich 203, 226-227; 487 NW2d 374 (1992).[1] In this case, plaintiff argues that defendant was negligent in failing to conduct an independent investigation to verify the assertions made in the article. Defendant argues that it could not have been negligent, as a matter of law, by simply republishing an article obtained by a reputable wire service. Defendant's argument is based on the wire-service defense, which Michigan courts have yet to address. We hereby recognize the defense.

The wire-service defense originated in the case of *Layne v Tribune Co*, 108 Fla 177; 146 So 234 (1933). In that case, the Supreme Court of Florida held:

> The mere reiteration in a daily newspaper, of an actually false, but apparently authentic news dispatch, received by a newspaper publisher from a generally recognized reliable source of daily news, such as some reputable news service agency engaged in collecting and reporting the news, cannot through publication alone be deemed *per se* to amount to an actionable libel by indorsement, in the absence of some showing from the nature of the article published, or otherwise, that the publisher must have acted in a negligent, reckless careless manner in reproducing it to another's injury. [*Id.* at 186.]

---

[1] Before the instant appeal, an interlocutory appeal was taken. In that previous appeal, the issue was whether plaintiff's probation report, prepared in connection with an unrelated criminal matter, was privileged and immune from discovery. That previous appeal is of no consequence in the instant appeal.

The defense is available where a local news organization reproduces, without substantial change or knowledge of falsity, an apparently accurate wire release by a reputable news-gathering agency. *Winn v Associated Press*, 903 F Supp 575, 579 (SD NY, 1995). There must be nothing on the face of the wire release that would put the local news organization on notice that the story may be inaccurate. *Brown v Courier Herald Publishing Co, Inc*, 700 F Supp 534, 537 (SD Ga, 1988).

We note that the wire-service defense is not so much a defense as it is a definition of a local news organization's duty:[2]

> [T]he wire service defense merely refines the definition of the duty of a local news media organization to avoid publishing false material. Stated simply, when a local media organization receives a wire service release, it has a duty to read the release to ensure that the face of the story itself does not contain any inconsistencies. The local media organization also has a duty to refrain from publishing the news story if the news organization knows the story is false or if the release itself contains unexplained inconsistencies. The local media organization does not have a duty, however, to independently verify the accuracy of the wire service release. [*Id.*]

The rationale behind the defense is that no local news organization could assume the burden of verifying every news item reported to it by established news-gathering agencies and continue to satisfy the demands of modern society for up-to-the-minute global information. *Layne, supra* at 188. Requiring local news organizations to independently verify the

---

[2] However, for the sake of tradition and consistency we will continue to refer to the wire-service defense as a defense.

accuracy of every wire-service release it desires to reproduce would force smaller publishers to confine themselves to stories about purely local events and would make it difficult for smaller, local news organizations to compete with publishers who could afford to either verify every story or assume the risk of litigation. *Appleby v Daily Hampshire Gazette*, 395 Mass 32, 39; 478 NE2d 721 (1985).

Such a defense is consistent with the custom and practice of the newspaper industry, in which reliance on the accuracy of wire-service articles is commonplace. *Id.* We also consider the defense to be consistent with Michigan law. A duty, in negligence cases, may be defined as " 'an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another.' " *Antcliff v State Employees Credit Union*, 414 Mich 624, 630-631; 327 NW2d 814 (1982), quoting Prosser, Torts (4th ed), § 53, p 324. The standard of conduct to which an actor must conform to avoid being negligent is that of a reasonable man under like circumstances. *Antcliff, supra* at 631. "This is the so-called standard of care against which a defendant's conduct is compared." *Id.* If an actor's standard of care does not include certain conduct, then the actor is under no duty with respect to that conduct. *Id.* at 631, n 5.

To require a local news organization to independently verify the accuracy of every wire-service release that the local organization has no reason to believe is inaccurate and is received from a reputable news-gathering agency would be to impose an obligation to conform to a standard of conduct greater than that of a reasonable man under like circumstances. The local news organization would, in essence, be

held to a standard of extraordinary, not ordinary, care. See *O'Brien v Williamson Daily News*, 735 F Supp 218, 225 (ED Ky, 1990). Therefore, by saying that the wire-service defense is available, what is really being said is that, under the circumstances, a local news organization's standard of care does not include the requirement to independently verify the accuracy of the news release, i.e., the organization is under no duty to independently verify the accuracy of the release.

In summary, if a local news organization republishes, without substantial change or knowledge of falsity, a wire-service release received from a reputable news agency, the contents of which do not reasonably indicate potential inaccuracy, the wire-service defense is available, and the local news organization has no duty to independently verify the accuracy of the wire release and cannot be negligent, as a matter of law, for failing to do so.

Generally, the existence of a duty is a question of law and does not require resolution of factual disputes, *Farwell v Keaton*, 396 Mich 281, 286-287; 240 NW2d 217 (1976), and where no legal duty exists, summary disposition in favor of the defendant is proper. MCR 2.116(C)(8); *Schmidt v Youngs*, 215 Mich App 222, 224-225; 544 NW2d 743 (1996). However, if there are factual circumstances that give rise to the duty, the existence of those facts must be determined by a jury. *Farwell, supra* at 286. In such cases, summary disposition would not be proper, and the matter must be submitted to the jury for resolution, accompanied by an appropriate instruction regarding a defendant's duty conditioned upon the jury's resolution of the factual dispute. *Id.* at 287.

In relation to the wire-service defense, because the extent of a local news organization's duty is conditioned upon the particular factual circumstance, i.e., whether the circumstances are such that the wire-service defense is available, there may be cases in which a factual resolution is necessary. For example, if reasonable minds could differ with respect to whether there is anything on the face of the news-service release that should have placed a defendant on notice of potential inaccuracy, summary disposition would be improper, and the issue would have to be submitted, with the appropriate conditional instruction, to a jury for resolution.[3] If, however, on the basis of the evidence presented, reasonable minds could not differ that the defense is available, then the defendant local news organization would have had no duty to independently verify the wire release and summary disposition in favor of the defendant should be granted. See *Vermilya v Dunham*, 195 Mich App 79, 83; 489 NW2d 496 (1992).

In the case at bar, defendant reproduced, without substantial change, an apparently accurate article released by a reputable news-gathering agency. There is no evidence or allegation that defendant knew the article contained falsities, and there is nothing in the content of the article itself that could reasonably have

---

[3] The jury should be instructed that if it finds that the wire-service defense is available, then the defendant cannot be negligent, as a matter of law, for failing to independently verify the accuracy of the news release. The instruction should then state that if circumstances are such that the defense is not available, then an obligation is imposed upon the local news organization to independently verify the accuracy of the story. It would then be a question of fact whether the actions taken by the local news organization to verify the accuracy of the news release were reasonable, or, in other words, whether the local news organization acted negligently in verifying the news release.

placed defendant on notice of potential inaccuracy. Under these circumstances, the wire-service defense is available, and defendant had no duty to independently verify the accuracy of the article. Summary disposition in favor of defendant was proper.

Because the correct result was reached, albeit for a different reason, we will affirm. See *Welch v District Court*, 215 Mich App 253, 256; 545 NW2d 15 (1996).

Affirmed.