# STATE OF MICHIGAN

# COURT OF APPEALS

SHAWN RYAN EICHLER, a minor by Next
Friend ARMINDA DAWN BAKER,

Plaintiff-Appellee,

v

MODERN WASTE SYSTEMS, INC.,

Defendant-Appellant.

UNPUBLISHED
December 11, 2018

No. 338606
Lenawee Circuit Court
LC No. 15-005322-NO

Before: O'BRIEN, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

Defendant, Modern Waste Systems, Inc. ("defendant"), appeals by right an order entering a final judgment in favor of plaintiff, Shawn Ryan Eichler ("plaintiff"), by his next friend and mother, Arminda Dawn Baker ("Mindy"), in this negligence action.

## I. BASIC FACTS

Plaintiff was eight years old on September 19, 2014, when he managed to pull a dumpster down on himself while attempting to perform a pull-up on a bar attached to the front of the dumpster. Plaintiff's grandmother, Brenda Joyce Baker ("Brenda"), rented the dumpster from defendant. Plaintiff and his mother, Mindy, lived next door to Brenda and plaintiff spent a great deal of his time at Brenda's house. Plaintiff's theory of the case was that the dumpster, which was a "slant-type" with a long overhang, was inherently dangerous if an 80-pound boy could pull it over so easily and that defendant was negligent for placing such a dumpster on a grass surface instead of on a concrete surface. Defendant countered that it owed plaintiff no duty. Alternatively, defendant argued that there was no breach of duty because Brenda was the one who chose the location for the dumpster. In addition to arguing that plaintiff was comparatively negligent for the accident, defendant filed a notice of non-party fault, maintaining that both Brenda and Mindy were negligent in failing to properly supervise plaintiff. After a three-day bench trial, the trial court found that the design and placement of the dumpster rendered the dumpster inherently dangerous and that defendant's negligence was the proximate cause of plaintiff's injuries.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING DEFENDANT SUMMARY DISPOSITION

-1-

Defendant argues that the trial court erred in failing to grant summary disposition in its favor where the evidence at the time of the motion for summary disposition revealed that defendant owed plaintiff no duty. Alternatively, defendant argues that, even if there was a duty owed to plaintiff, defendant did not breach any duty.

"This Court reviews de novo a circuit court's decision whether to grant or deny summary disposition." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205; 815 NW2d 412 (2012). The determination of the existence of a duty presents a question of law subject to de novo review. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012). If there is no duty, summary disposition is proper. *Beaudrie v Henderson*, 465 Mich 124, 130; 631 NW2d 308 (2001). However, if factual questions exist regarding what characteristics giving rise to a duty are present, the issue must be submitted to the factfinder. *Howe v Detroit Free Press, Inc*, 219 Mich App 150, 156; 555 NW2d 738 (1996), aff'd 457 Mich 871 (1998).

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "[A] defendant is not liable to a plaintiff unless the defendant owed a legal duty to the plaintiff." *Id*.

> It is axiomatic that there can be no tort liability unless [a] defendant[ ] owed a duty to [a] plaintiff. Every person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others. However, as a general rule, there is no duty that obligates one person to aid or protect another. Generally, the duty that arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law . . . [*Hill*, 492 Mich at 660–661; (quotation marks and footnotes omitted).]

Defendant owed plaintiff a common law duty of care. At the time of defendant's motion for summary disposition, there was a question of fact as to whether, in undertaking the duty to fulfill its contract with Brenda, defendant created a new hazard by placing an inherently dangerous dumpster on something other than a flat and level surface. See *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157; 809 NW2d 553 (2011). Defendant cites *Bailey v Schaaf*, 494 Mich 595, 604; 835 NW2d 413 (2013), at length in support of its position that defendant owed plaintiff no duty separate and apart from the contractual obligation to Brenda, but *Bailey* is not directly on point. *Bailey* involved a landlord's duty to protect a tenant against the criminal act of a third party. The issue there was whether the plaintiff had entrusted himself to the control and protection of the defendant. Here, plaintiff alleges that defendant placed an inherently dangerous dumpster on Brenda's property and failed to ensure that the dumpster was placed on a hard and flat surface. The issue, then, was whether defendant used ordinary care to avoid harm to plaintiff, who was a foreseeable individual.

Defendant argues the trial court should not have considered plaintiff's expert's unsigned and unsworn affidavit opining that dumpster was inherently dangerous and was not placed on a proper surface. However, defendant never raised this issue in reply to plaintiff's response to the

summary disposition motion. Instead, defendant attacked the affidavit as being in conflict with "eyewitness" testimony. There were no eyewitnesses to the actual accident, only its aftermath. As such, defendant must be referring to testimony from Brenda and Mindy that the dumpster had been there for a number of years and never had a problem in the past. The fact that there were no accidents for a number of years was not dispositive that the dumpster was safe. It obviously was not, if an 8-year-old child could pull it down so easily. Moreover, the affidavit was not the only evidence plaintiff provided in his response to defendant's motion for summary disposition. Plaintiff provided photographs of the dumpster at issue and including safety reports from the Consumer Products Safety Commission. The dumpster appeared to be of the type prohibited under the report. It was not retrofitted with footings or braces. A question of fact clearly existed as to whether the dumpster was inherently dangerous and whether the dumpster's placement added to the danger that the dumpster would tip. The trial court did not err in denying defendant's motion for summary disposition.

### III. WHETHER THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT WAS NEGLIGENT

For this particular issue, defendant focuses entirely on whether the trial court properly considered Steven Ziemba's testimony when it concluded that defendant breached its duty to plaintiff. Defendant maintains that, had the trial court properly refused to consider Ziemba's testimony, there would have been no basis for finding defendant negligent. "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). To the extent defendant attacks the trial court's findings:

> This Court reviews a trial court's findings of fact in a bench trial for clear error and reviews de novo its conclusions of law. A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made. An appellate court will give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it. [*Ambs v Kalamazoo Co Rd Comm'n*, 255 Mich App 637, 651–652; 662 NW2d 424 (2003) (quotation marks, citations, and footnote omitted).]

At trial, Ziemba described himself as a "safety consultant." He graduated in 1972 from Wayne State University with a Bachelor of Science in chemical engineering. From 1972 to 1989 Ziemba was a safety engineer with various insurance companies and conducted accident investigations. The work included looking for fire hazards, liability hazards, and inspecting equipment.

Ziemba was asked to determine the safety of the type of dumpster involved in the accident. Ziemba testified that the Consumer Product Safety Commission had been looking into the dangers of the "slant-side" dumpsters since the 1970's. At this point, defense counsel objected, not because of Ziemba's qualifications, but plaintiff failed to include a claim for defective design in his complaint. The trial court noted that defendant was aware of plaintiff's theory since February 2016 and "if you knew that was what they were doing and I didn't hear a motion in limine or any other prophylactic measure besides getting this on the table here in the

middle of day one of our trial." The trial court permitted plaintiff to delve into the alleged design flaw.

Ziemba testified that the slant-type dumpster had the potential for being unstable and were actually banned in 1978. Owners could retrofit the dumpsters with bracing extensions that would enhance stability. Ziemba also pointed to a May 22, 1984 product sheet from the Consumer Product Safety Commission. The article was based on a number of studies showing that there had been 13 deaths of young children due to lack of stability. Plaintiff's attorney asked Ziemba to provide "more of an engineering explanation," to which Ziemba answered:

> Well, simple terms is everything has a center of gravity for stability. You move beyond – like if you're standing and then you lean way over, your stability – your center of gravity shifts and it's no longer between your shoulders or your feet. This is the same thing. Your center – if it was a rectangular bin, the center of gravity, assuming the construction was the same, would be in the center. But now that you have this slanted bin, you have this side, this extra weight on this edge, and that shifts it from the dead center over closer to the slanted side. Now you add additional forces or weight, such as a child pulling on it or hanging on it or anybody, and it's gonna tip over.

Ziemba opined that an 80-pound child should not be able to tip over a dumpster.

He testified that the Consumer Product Safety Commission used two tests for checking requirements for stability. The first is a horizontal push test where 70 pounds of force is exerted at the top edge to see if the bin can be pushed over. The second is a vertical, or pull down, test to see if the dumpster tips with 191 pounds of force. Ziemba noted that the bin that plaintiff pulled over did not have safety extensions. The type of bin that injured plaintiff was the exact type that was previously banned. However, Ziemba never had an opportunity to examine the exact bin that injured plaintiff. Instead, defendant offered a modified bin for Ziemba's examination. The modified bin had extensions and was also placed on a hard level surface. Ziemba performed the pull-down test on the bin defendant provided and was unable to tip it at 75 pounds. In fact, he broke his measuring device. He noted, however that the bin was also placed on a hard level surface. Ziemba was unable to perform the other test because he did not have the equipment needed. Ziemba and plaintiff's attorney ultimately found a non-modified bin on defendant's property. The bin was placed on a "dirt type" surface and plaintiff's counsel was able to tip it over with one hand. This particular bin, like the one involved in plaintiff's accident, was not modified with base extensions. Ziemba did not perform any testing on the bin because his gauge was broken. Ziemba and plaintiff's attorney then went on a road trip to see if there were other such bins in the community. They found another un-modified container. It was on a hard surface and was only tippable with an extreme amount of force. The concrete pad placement made the difference. Ziemba believed that a grassy surface could become soft and mushy. Ziemba opined that the dumpster that injured plaintiff was "definitely not safe" and was the direct cause of plaintiff's injuries.

Defense counsel rigorously cross-examined Ziemba, eliciting that chemical engineering had nothing to do with dumpster design. Ziemba also acknowledged that his certificate as a certified safety professional lapsed about 16 years prior to trial. Ziemba was not certified as an

expert in the area of human factors or ergonomics.  Nor was he a certified safety engineer. Ziemba had no training or experience with respect to dumpster design.

On appeal, defendant argues that Ziemba was not offered as an expert, but then offered expert testimony that defendant breached its duty to plaintiff.  MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

However, although Ziemba's testimony contained elements of scientific, technical or specialized knowledge, he was not offered as an expert and was not received as an expert.  Instead, he provided lay witness testimony under MRE 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

MRE further provides:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of Rule 703[1], relating to opinion testimony by expert witnesses.

Ziemba testified to what he observed at defendant's warehouse and relevant literature.  It cannot be said that his testimony was overly dependent on scientific, technical, or other specialized knowledge.  His testimony was "rationally based on his perception of the evidence that he found at the scene of the accident" and at defendant's place of business, *Chastain v Gen Motors Corp*, 254 Mich App 576, 588; 657 NW2d 804 (2002), and, as the trial court noted, was helpful to a clear understanding of a fact in issue in the case.  In any event, even if Ziemba's testimony amounted to expert testimony, reversal is not necessary.  See *People v Dobek,* 274 Mich App 58, 62; 732 NW2d 546 (2007).

---

[1] MRE 703 provides: "The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence. This rule does not restrict the discretion of the court to receive expert opinion testimony subject to the condition that the factual bases of the opinion be admitted in evidence thereafter."

## IV. WHETHER THE TRIAL COURT ERRED IN FAILING TO FIND PLAINTIFF COMPARATIVELY NEGLIGENT AND REFUSING TO APPORTION FAULT TO BRENDA AND MINDY

Defendant argues that the trial court failed to find plaintiff comparatively negligent. Generally, minors are not held to the same standard of care as adults, but are required only to exercise the degree of care that a reasonably careful minor of the age, mental capacity and experience of other similarly situated minors would exercise under the circumstances. *Bragan v Symanzik*, 263 Mich App 324, 328; 687 NW2d 881 (2004). "[T]he capabilities of children older than seven pose a question of fact for the jury, which is to determine it on the basis of whether the child had conducted himself as a child of his age, ability, intelligence and experience would reasonably have been expected to do under like circumstances." *Estate of Goodwin v Northwest Michigan Fair Ass'n*, ___ Mich App ___; ___ NW2d ___ (Docket No. 333963, issued July 3, 2018), slip op, p 16.

It is clear that the trial court considered plaintiff's relative fault and simply concluded that this type of accident should not have occurred regardless of plaintiff's conduct. That is, even if plaintiff was well aware of the danger, his 80-pound frame should not have caused the dumpster to tip. The trial court concluded that it was the dumpster's design and placement that caused the accident, not plaintiff's conduct.

Defendant next argues that the trial court failed to apportion fault to Brenda and Mindy. The proportionate fault of nonparties must be ascertained and liability allocated accordingly. MCL 600.2957(1); MCL 600.6304; *Lamp v Reynolds*, 249 Mich App 591, 597; 645 NW2d 311 (2002). Our Court recently reaffirmed that "parents have a duty to supervise their own children, or determine that their children are of sufficient age and maturity to no longer need such supervision" and that "[t]his duty to supervise one's child includes an obligation to see that the child's behavior does not involve danger to the child . . ." *Estate of Goodwin v Northwest Michigan Fair Ass'n*, ___ Mich App ___; ___ NW2d ___ (Docket No. 333963, issued July 3, 2018), slip op, p 7.) And, "[a]lthough parents have a duty to supervise their children, a parent's presence on the property does not abrogate the duty a premises owner owes to children" to "protect children from dangerous conditions on their premises notwithstanding the presence of the children's parents." *Id.* at n 7.

A social worker and access clinician at Lenawee Community Mental Health Authority testified that plaintiff needed constant supervision. Brenda testified that if plaintiff had asked if he could play on it she would have told him "no." Brenda never told plaintiff that he couldn't play on the dumpster. If she had thought it was a safety hazard, she would've had defendant remove it.

As with plaintiff's alleged comparative fault, the trial court did, in fact, consider non-party fault and simply refused to find that Brenda or Mindy bore any responsibility for the accident. Again, the trial court stated: "Although there is inconsistent testimony, the dumpster was on ground and situated such that it should not have tipped over with the pressure of a 100 pound or less child. None-the-less it did tip over on this young Plaintiff."

## V. WHETHER THE TRIAL COURT ERRED IN ITS AWARD OF DAMAGES

Defendant argues that the trial court erred in failing to make specific findings required by MCL 600.6305(1) and that it should not have considered evidence of plaintiff's medical expenses, which plaintiff failed to disclose during discovery.

An appellate court reviews a trial court's determination of damages following a bench trial for clear error. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003). An appellate court "will not set aside a nonjury award merely on the basis of a difference of opinion." *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002), quoting *Meek v Dep't of Transportation*, 240 Mich App 105, 121; 610 NW2d 250 (2000). "Clear error exists where, after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made." *Marshal Lasser*, 252 Mich App at 110.

Defendant's argument that the trial court should not have considered plaintiff's medical bills goes to the admission of evidence. Again, "[a] trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Edry*, 486 Mich at 639

Defendant argues that the trial court failed to make the requisite findings to support the damages award. It further argues that the trial court abused its discretion when it considered evidence that plaintiff had incurred $29,000 in medical bills when plaintiff failed to provide such information during discovery.

Determination of the damages necessary to compensate a plaintiff for personal injury, particularly for pain and suffering, rests within the sound discretion of the trier of fact. There is no absolute standard by which to measure such awards. *Kelly v Builders Square, Inc*, 465 Mich 29, 35-36; 632 NW2d 912 (2001); *Precopio v Detroit*, 415 Mich 457, 464-465; 330 NW2d 802 (1982). "It is true that damages that are speculative or based on conjecture are not recoverable. However, it is not necessary that damages be determined with mathematical certainty; rather, it is sufficient if a reasonable basis for computation exists." *Chelsea Inv Group LLC v Chelsea*, 288 Mich App 239, 255; 792 NW2d 781 (2010). Here, it is clear from the trial court's opinion that the amount awarded represented noneconomic damages for the physical and emotional pain suffered by plaintiff. Noneconomic damages are defined as "damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss." MCL 600.1483(3). Accordingly, the trial court complied with MCL 600.6305.

The issue of plaintiff's medical bills was also fully explored. During opening statements, plaintiff's attorney noted that plaintiff's medical bills as of October 2016 were $27,419.32 and had gone up since then. Defense counsel noted that plaintiff made no claim for medical bills or economic losses. During trial, plaintiff's counsel sought to admit the bills and defense counsel objected. Plaintiff's attorney indicated that the bills were paid mostly through Medicaid and that there was a lien on the file. Plaintiff had to subpoena the bills and that was why they were not immediately available to defendant during discovery. Defense counsel noted that plaintiff's answer to Interrogatory 18 that asked plaintiff to "list all losses or expenses you or the minor Plaintiff have incurred as a result of the events described in the Complaint" was simply "my mileage; loss of 1 day of work" and made no reference to medical bills. Plaintiff never supplemented discovery to claim the medical bills. The trial court expected that defendant wasn't surprised by the bills and should have anticipated such a claim. It received the bills over

defense counsel's claim that there was no indication that the charges were reasonable or related to the injury. It cannot be said that the trial court's decision to receive the bills was an abuse of discretion.

Affirmed. As the prevailing party, plaintiff may tax costs. MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood