*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JEROME DUBRULLE, JENNIFER DUBRULLE,
EDWARD KERFOOT, ELLEN KERFOOT,
NICOLE NORRIS, MATTHEW NORRIS, CHAD
HAURANI, MONA HAURANI, MARCY
TAYLER, ABBY PAULSON, ANDREW
HASTINGS, MARGUERITE KAISER, ROBERT
KAISER, MOLLY MCCLANAGHAN, RYAN
MORRIS, PATRICK SHANLEY, KELLY
SHANLEY, RHONDA FENDERSON, SARAH
FELDMAN, JOSHUA TUCKER, DANIELLE
TUCKER, and all others similarly situated,

UNPUBLISHED
August 21, 2025
10:54 AM

     Plaintiffs-Appellants,

and

MICHELLE BUSUITO and MATTHEW HOWE,

     Plaintiffs,

v

No.   367095
Wayne Circuit Court
LC No.   21-009198-NZ

DTE ENERGY COMPANY, MILLER PIPELINE-
MICHIGAN LLC, UTILITY RESOURCE GROUP
LLC, and TMC ALLIANCE LLC,

     Defendants-Appellees.

Before:  PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

     Plaintiffs sued defendants, alleging that defendants' actions caused power outages in the
Freud Pump Station, resulting in the flooding of plaintiffs' properties.  The trial court denied
plaintiffs' motion to amend their complaint to add DTE Electric Company as a defendant.
Ultimately, the trial court granted defendants' motions for summary disposition under MCR

-1-

2.116(C)(8) and denied plaintiffs' motion to strike exhibits that DTE Energy Company and Utility Resource Group LLC (URG) filed with their motions. We reverse and remand for further proceedings.

## I. BACKGROUND

According to plaintiffs' third amended complaint (TAC), on June 22, 2021, defendant Miller Pipeline–Michigan LLC, acting as a contractor for DTE Energy or one of its subsidiaries, was engaged in excavation and damaged an underground cable. As a result, power could not be transmitted from the Ludden Substation to the Freud Pump Station, and five of the eight pumps at the pump station became inoperable. On June 25 and 26, 2021, a "rain event" occurred. Plaintiffs purportedly experienced property damage as a result of sewage backups and flooding. The parties dispute the comparative impact of the rain and disabled pumps on plaintiffs' alleged damages, and the admissibility of information about the extent of the rain at this stage of the proceedings, but no parties dispute that there was a damaged cable or power outage, or that it rained on June 25 and 26, 2021.

Plaintiffs originally sued DTE Energy and "John Does 1-5." DTE Energy first moved for summary disposition under MCR 2.116(C)(8) in December 2021, arguing that plaintiffs failed to plead how DTE Energy "fit[] into this picture" or owed plaintiffs a duty. The trial court denied DTE Energy's motion, concluding that plaintiffs' complaint sufficiently alleged the facts and elements of plaintiffs' claims. The case was ultimately reassigned to a different trial court judge.

In June 2022, plaintiffs moved for leave to file the TAC. Plaintiffs sought to add Miller Pipeline, URG, TMC Alliance LLC (TMCA), and DTE Electric as defendants, and to remove reference to John Does 1-5. DTE Energy opposed the request, arguing that amending plaintiffs' complaint would be futile. DTE Energy further argued that plaintiffs "improperly conflate[d] DTE Energy and DTE Electric," that neither DTE Energy nor DTE Electric had a contractor relationship with Miller Pipeline or TMCA, and, even if a DTE entity had contracted with one of the subcontractors, any negligence could not imputed to DTE. Following a hearing, the trial court granted plaintiffs' motion to add the proposed defendants, except for DTE Electric. The trial court stated during the hearing that adding DTE Electric would be futile.

The TAC alleged that defendants "were collectively responsible" for either damaging the cable or failing to take reasonable steps to repair the power instrumentalities servicing Freud Pump Station, and, as a result, Freud Pump Station was not fully operational during the "rain event," and plaintiffs suffered property damage from the resulting sewage backups. Specifically, plaintiffs alleged that URG had been responsible for marking the power cables and had a duty to mark the infrastructure as URG had indicated that it had. Miller Pipeline, acting as a contractor for DTE Energy or one of its subsidiaries, had damaged the cable, failed to act with reasonable care, locate the cables, or engage in soft-excavation techniques.[1] According to plaintiffs, DTE Energy and

_____

[1] Under the MISS DIG Underground Facility Damage Prevention and Safety Act, MCL 460.721 *et seq.*, "soft excavation" is "a method and technique designed to prevent contact damage to underground facilities, including, but not limited to, hand-digging, cautious digging with

-2-

Miller Pipeline had a duty to conduct a reasonable investigation to locate the underground power cables near the planned excavation project. Further, DTE Energy and TMCA had a duty to maintain and repair the power infrastructure that serviced the sewage-disposal system, but they had failed to do so. Plaintiff explained that a 2014 agreement, the Energy Delivery Services Agreement (EDSA), provided for a gradual system conversion of Detroit Public Lighting Department's (DPLD) assets, services, and customers to DTE. Under the EDSA, the city of Detroit had contracted with TMCA to perform maintenance repairs on the DPLD system, but TMCA was required to submit proposed work to DTE for review and approval, and DTE made payments to TMCA. Plaintiffs alleged that DTE Energy failed to supervise its contractors, despite being "functionally responsible" for the operation and maintenance of the DPLD system, including the Ludden Substation and its instrumentalities.

Defendants each moved for summary disposition under MCR 2.116(C)(8), each describing the June 25 and 26, 2021 rain as severe, historic, or a "1,000-year storm." Specifically, Miller Pipeline argued that it did not owe a legal duty to plaintiffs and that its actions were not a proximate cause of plaintiffs' damages. In its motion, TMCA also argued that it was entitled to summary disposition because plaintiffs could not demonstrate that TMCA owed them a duty or that TMCA's actions were the cause in fact or a proximate cause of plaintiff's damages. Next, DTE Energy denied that it owed a duty to plaintiffs. In support of its motion, DTE Energy submitted various exhibits, including Great Lakes Water Authority (GLWA) "Talking Points"; slides from a presentation to GLWA by AECOM, an engineering consulting firm; an executive order of Governor Whitmer declaring a state of emergency as a result of the "heavy rainfall"; and a contract purportedly between Miller Pipeline and DTE Gas to demonstrate that DTE Energy had not contracted with Miller Pipeline. Finally, URG argued that it was entitled to summary disposition on the basis of a lack of proximate cause. URG attached exhibits that included the AECOM presentation and the executive order.

Plaintiffs opposed the motions, and they also moved the trial court to strike or exclude the AECOM presentation, GLWA Talking Points, and executive order on the basis that the trial court was not permitted to consider evidence outside the pleadings when deciding defendants' motions made under MCR 2.116(C)(8). Further, the exhibits were "inadmissible, unreliable, and contain[ed] hearsay not subject to any exception." The trial court denied plaintiffs' motion.

After a hearing, the trial court granted defendants' motions for summary disposition. In its opinion, the trial court referred to the June 25 and 26, 2021 rain as an "extraordinary 1000-year rainfall event." The trial court stated that it would treat DTE Energy "as encompassing all of its subsidiaries," which included DTE Electric and DTE Gas. Next, the trial court determined that any duty that DTE Energy owed to plaintiffs arose from the common law. Although the EDSA was "somewhat confusing," and DLPD continued to own the electrical infrastructure, the EDSA "appear[ed] to transfer maintenance of the prior DLPD lines to DTE." Further, it was "clear" to the trial court that a DTE entity "was in control of the electrical infrastructure of the pumping stations." The trial court determined that the damage that plaintiffs suffered "resulted from a series

---

nonmechanical tools, vacuum excavation methods, or use of pneumatic hand tools." MCL 460.723(bb).

of unfortunate events that coincided with an unexpected torrential rain event" and there was "no connection between" the damaged utility and the damage to plaintiffs' homes. Instead, "the extraordinary 1000-year rainfall event was not reasonably foreseeable and was the superseding cause of the damage done."

Accordingly, the trial court concluded that DTE Energy owed no duty to plaintiffs when the unforeseeable event was the cause of the damage. Additionally, Miller Pipeline was entitled to summary disposition on the basis of a lack of proximate cause because the rainfall was a superseding cause that was not reasonably foreseeable. Likewise, plaintiffs could not establish that URG's actions were a proximate cause of plaintiffs' damages. Finally, according to the trial court, "TMCA was in no way implicated in or connected to any damage suffered by Plaintiffs."

Plaintiffs now appeal.[2]

## II. ANALYSIS

## A. MOTION TO STRIKE

First, plaintiffs argue that the trial court erred by failing to strike evidence that DTE Energy and URG submitted with their motions for summary disposition. We review for an abuse of discretion a trial court's decision on a motion to strike. *Kalaj v Khan*, 295 Mich App 420, 425; 820 NW2d 223 (2012). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 367; 986 NW2d 451 (2022) (cleaned up).

When deciding a motion made under MCR 2.116(C)(8), a trial court may only consider the pleadings. MCR 2.116(G)(5). In this case, defendants moved for summary disposition under MCR 2.116(C)(8), and, accordingly, the trial court was not permitted to consider information beyond the pleadings. On appeal, DTE Energy argues that the challenged exhibits contained information subject to judicial notice under MRE 201. At the time that the trial court made its decision, MRE 201(b) provided, "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Although a trial court may take judicial notice of certain facts, the parties disagree about the amount of rain that occurred and the impact that the rain had on plaintiffs' property damage. Accordingly, the facts were subject to reasonable dispute at this stage of the proceeding.[3]

---

[2] These plaintiffs have also sued the GLWA and involved cities in a separate case. The trial court dismissed those claims under MCR 2.116(C)(7) on the basis of governmental immunity. An appeal of that order is pending.

[3] This does not necessarily foreclose defendants from arguing that there is a lack of a genuine question of material fact in a motion for summary disposition made under MCR 2.116(C)(10) following discovery.

It was not improper for the trial court to take judicial notice of the *existence* of the executive order when there can be no dispute that the order was issued. See, e.g., *Dalley v Dykema Gossett*, 287 Mich App 296, 301 n 1; 788 NW2d 679 (2010). Nor do plaintiffs dispute that it rained. It was, however, erroneous for the trial court to consider the content of the order, and the content of the other exhibits, to determine, at this stage of the proceedings, that the rain was a superseding cause of the damages when the facts could not reasonably be said to have been undisputed or capable of accurate determination. See *Freed v Salas*, 286 Mich App 300, 340; 780 NW2d 844 (2009).

## B. SUMMARY DISPOSITION

Next, plaintiffs argue that the trial court erred by granting summary disposition to all defendants. This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Sherman v City of St. Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). A trial court may only grant a motion under MCR 2.116(C)(8) "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. "Whether a defendant owes a particular plaintiff a duty is a question of law that this Court reviews de novo." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013).

A negligence claim requires that a plaintiff establish that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; (3) the plaintiff suffered damages; and (4) the breach proximately caused the plaintiff's damages. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). There can be no liability for negligence if the defendant owed no duty to the plaintiff. *Hills v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). A duty may arise from statute or through common-law principles. *Phillips v Deihm*, 213 Mich App 389, 397; 541 NW2d 566 (1995). Under the common law, every person has "an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967). If the existence of a duty turns on the resolution of a factual dispute, then the dispute must be submitted to the fact-finder. *Howe v Detroit Free Press, Inc*, 219 Mich App 150, 156; 555 NW2d 738 (1996). "Proximate cause is usually a factual issue to be decided by the trier of fact, but if the facts bearing on proximate cause are not disputed and if reasonable minds could not differ, the issue is one of law for the court." See *Dawe v Dr Reuven Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 393; 808 NW2d 240 (2010).

Plaintiffs argue that it was improper for the trial court to consider information apart from the pleadings and make factual determinations when granting defendants summary disposition. It does appear, in fact, that the trial court considered the extent and nature of the rainfall, either through the exhibits that defendants submitted or through information provided in plaintiffs' other lawsuit. Specifically, the trial court determined that "the damage suffered by Plaintiffs resulted from a series of unfortunate events that coincided with an unexpected torrential rain event" and that there was "*no* connection between the damage done to the electric power line and the cause of the damage done to Plaintiffs' homes" (emphasis added). The trial court determined that "the

1000-year rainfall was a superseding cause and was not reasonably foreseeable." This was all information outside the TAC.

This was error. "Michigan is a notice-pleading jurisdiction," *Dobronski v Transamerica Life Ins Co*, 347 Mich App 92, 106; 13 NW3d 895 (2023), and, in this case, plaintiffs adequately put defendants on notice of plaintiffs' claims against them. Plaintiffs were only required to include enough information in their complaint "reasonably to inform the defendant of the nature of the claim against which [it] must defend." *Veritas Auto Machinery, LLC v FCA Int'l Operations*, 335 Mich App 602, 615; 968 NW2d 1 (2021) (cleaned up).

With respect to duty, although there are a variety of factors to consider when determining whether to recognize a duty, "the nature of the relationship between the parties and the foreseeability of the harm are paramount." *Roberts v Salmi*, 308 Mich App 605, 614; 866 NW2d 460 (2014). There is no duty to exercise reasonable care to avoid an unforeseeable harm. See *Babula v Robertson*, 212 Mich App 45, 51-52; 536 NW2d 834 (1995).

The trial court concluded that DTE Energy had no duty to plaintiffs, primarily resting its decision on the unforeseeable nature of the damages and the superseding cause of the rain. Foreseeability is a crucial factor when addressing whether a duty exists. See *Roberts*, 308 Mich App at 53. The trial court's opinion also appears to determine that DTE Energy could not have been a proximate cause of plaintiffs' damages on the basis of superseding rain. There is not, however, enough factual support at this point in the proceedings to determine whether DTE Energy was entitled to dismissal on the basis of duty or proximate cause. See *Veritas*, 335 Mich App at 614. DTE Energy argues that the trial court appropriately determined that the rainstorm was a superseding cause of plaintiffs' damages when "the magnitude of the rainstorm and the infrequency of such an event are beyond dispute." The magnitude of the rain and its impact, however, were in dispute, and the trial court could not determine, at this stage of the proceedings, that no factual developmental could possibly justify recovery. See *El-Khalil*, 934 NW2d at 160.

Moreover, plaintiffs adequately pleaded a relationship between DTE Energy and plaintiffs. The trial court seemed to recognize this, noting that it was "clear" that "DTE[] was in control of the electric infrastructure of the pumping stations" and that Miller Pipeline was a DTE contractor. The trial court observed that the EDSA was "somewhat confusing," but it "appear[ed] to transfer maintenance of the prior DPLD lines to DTE."

Despite acknowledging a potential relationship between a DTE entity and plaintiffs, the trial court determined that DTE Energy had no duty to plaintiffs. As discussed below, the trial court erred by not allowing plaintiffs to amend their complaint to add DTE Electric as a defendant. Plaintiffs alleged that DTE Energy, or one of its subsidiaries, was responsible for managing the Ludden Substation and overseeing TMCA's work to ensure that the Freud Pump Station was adequately operational. Further, plaintiffs alleged that a DTE entity approved the excavation project, even though it knew, or should have known, that DPLD cables were nearby; failed to supervise Miller Pipeline's work plan; and failed to take reasonable steps to repair the electrical service despite knowing about the power outage for three days before the forecasted rain. Although DTE Energy disputes these allegations, those questions are not resolvable under MCR 2.116(C)(8). Further, although DTE Energy argues that it cannot be held liable for any negligence by its contractors, see *DeShambo v Nielsen*, 471 Mich 27, 31; 684 NW2d 332 (2004), even if it

had contracted with the other defendants in this case, plaintiffs' allegations were sufficient to warrant factual development before this determination is made. Accordingly, plaintiffs adequately pleaded a duty.

DTE Energy also relies on the trial court's opinion in the GLWA case, arguing that plaintiffs "had a full and fair opportunity to litigate the factual predicates for the trial court's ruling" and are bound by that adjudication. The trial court, however, dismissed that case on a motion made under MCR 2.116(C)(7). Although a trial court is permitted to consider record evidence when evaluating claims of governmental immunity, see MCR 2.116(G)(5), it is not accurate to say that plaintiffs have had a full and fair opportunity to litigate the issues in this case, that differ from the claims in plaintiffs' other case, against different defendants, before completing discovery. Further, as plaintiffs argue, DTE Energy did not claim collateral estoppel in its motion for summary disposition, and the trial court did not determine that it applied. "Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding." *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). DTE Energy argues that under the concept of "One Court of Justice," see, e.g., *Prawdzik v Heidema Bros, Inc*, 352 Mich 102; 89 NW2d 523 (1958), the trial court was permitted to take notice of the proceedings in plaintiffs' other case. Although a trial court may be permitted to consider that other related records exist, weighing those factual findings in this case is not appropriate, particularly when plaintiffs' other case involved different defendants and factual questions. Therefore, the trial court erred by granting DTE Energy's motion.

The trial court did not address the duties of the remaining defendants, beyond noting that there can be no duty when an unforeseeable event was the cause of the damages, although TMCA and Miller Pipeline properly raised the issue in their motions for summary disposition. As with DTE Energy, however, summary disposition on the basis of duty would have been premature for these defendants.

Turning to proximate cause, the trial court primarily decided the case as to all defendants on the basis that the rain constituted a superseding cause. To establish causation, a plaintiff must prove that a defendant's action was both the cause in fact and a proximate cause of the plaintiff's injuries. See *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id*. at 163. Proximate cause, or legal causation, "requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim." See *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017). More than one proximate cause may contribute to an injury. *Id*. "An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable." *McMillian v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985). "[B]ecause proximate cause is concerned with the foreseeability of consequences, only a human actor's breach of a duty can be a proximate cause." *Ray*, 501 Mich at 72. A nonhuman force may constitute a superseding cause that relieves a defendant from liability, however, if the intervening force was not reasonably foreseeable. *Id*.

The trial court erred by determining at this stage of the proceedings that the rain constituted a superseding cause, precluding a finding that plaintiffs did not adequately plead causation. There

may be no dispute that it rained on June 25 and 26, 2021, but the parties dispute the extent of the rain. Critically, the extraneous records cited by defendants are all outside the pleadings, and the information in those records cannot be judicially noticed for purposes of summary disposition under MCR 2.116(C)(8).

Accordingly, the trial court erred by granting URG's motion on the basis of proximate cause. Plaintiffs properly pleaded that URG responded to the MISS DIG notification and that URG may be liable if they failed to mark the cable, resulting in the power outage at Freud Pump Station and flooding of plaintiffs' properties. It is not unforeseeable as a matter of law, with this lack of evidentiary record, that failing to mark underground utilities could result in the damages that plaintiffs allege here. URG argues that the unprecedented nature of the rain event is not disputable. To argue that the rain was a superseding cause, however, requires factual determinations that some level of rain superseded the effect of the power outages, and those determinations cannot yet be made. As plaintiffs argue on appeal, rain, even heavy rain, is not necessarily unforeseeable, and sewage backups are a foreseeable type of injury to result from disabling a pumping station.

Likewise, the trial court erred by granting Miller Pipeline's motion for summary disposition on the basis of proximate cause. Plaintiffs properly alleged that Miller Pipeline damaged the cable, resulting in the power outages, after failing to locate the cable or use soft-excavation techniques. It was erroneous to determine at this point that no factual development could support plaintiffs' well-pleaded claims against Miller Pipeline.

Finally, plaintiffs properly pleaded causation as it related to TMCA. Specifically, plaintiffs alleged that TMCA undertook the duty to repair the power instrumentalities, but failed to do so in a timely manner, and the resulting inoperability of the Freud Pump Station pumps caused plaintiffs' damages. TMCA disputes that plaintiffs can establish either cause in fact or proximate cause, but little is known at this stage of the proceedings about what actions TMCA took toward making the repairs and what impact TMCA's actions had on the Freud Pump Station remaining disabled by the time of the rain. As TMCA argues on appeal, proximate cause does not always need to be determined by a jury. See *Babula*, 212 Mich App at 54. It is possible that, following discovery, the trial court will determine that plaintiffs have failed to raise a genuine question of material fact on the issue. At this point, however, plaintiffs have put TMCA, and all defendants, on notice of the claims against them. Further, as plaintiffs argue on appeal, defendants blame each other for plaintiffs' damages, but multiple tortfeasors may be liable for a common injury. See *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 472 Mich 44, 56; 693 NW2d 149 (2005). Plaintiffs are entitled to engage in discovery regarding their well-pleaded allegations.

## C. MOTION TO AMEND

Finally, plaintiffs argue that the trial court erred by denying their motion to add DTE Electric as a party. This Court reviews for an abuse of discretion a trial court's decision regarding a motion to amend pleadings. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 458; 980 NW2d 119 (2021).

A party has the right to "amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party." MCR 2.118(A)(1). "Except as

provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." MCR 2.118(A)(2). If a court grants summary disposition under MCR 2.116(C)(8), it must give the parties an opportunity to amend their pleadings, unless amendment would be futile. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). A trial court should ordinarily grant a motion to amend, and should only deny a motion to amend on the basis of "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, [or] (5) futility." *Id*. (cleaned up).

First, DTE Energy argues that plaintiffs lack standing to challenge the trial court's denial of their motion to add DTE Electric as a defendant because the trial court treated DTE Energy and its subsidiaries as one party, and, accordingly, plaintiffs were not aggrieved by the decision. An appellant may, however, "raise issues on appeal related to prior orders." *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009) (cleaned up). Further, because the pleadings were sufficient to survive defendants' motions for summary disposition under MCR 2.116(C)(8), the question of DTE Energy's and DTE Electric's involvement will be relevant on remand. The trial court found that adding DTE Electric would be futile, but DTE Energy has argued that plaintiffs were conflating DTE Energy and DTE Electric, and that DTE Energy was not a party to the EDSA or otherwise close enough to the events to be held liable. Adding DTE Electric will permit the proper parties to engage in discovery and litigation.

Therefore, adding DTE Electric at this stage of the proceedings would not be futile. The trial court did not address the remaining bases for denying a motion to amend, but there is also no evidence that there was undue delay or that plaintiffs acted in bad faith by not first naming DTE Electric as a defendant. See *Weymers*, 454 Mich at 658. Further, there is no evidence that there were repeated failures to cure deficiencies, or that that there would be undue prejudice to DTE Energy, DTE Electric, or any other defendant to allow the amendment. See *id*. Accordingly, the trial court erred by denying plaintiffs' motion for leave to amend to add DTE Electric as a party.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle